UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAUL J. DURKACZ, individually and on behalf of all others similarly situated,<br><br>   Plaintiff,<br><br>v.<br><br>CIBC WORLD MARKETS, INC., CIBC WORLD MARKETS CORP., THE CANADIAN IMPERIAL BANK OF COMMERCE, RBC DOMINION SECURITIES, INC., RBC CAPITAL MARKETS, LLC, and ROYAL BANK OF CANADA,<br><br>   Defendants. | Case No. 1:25-cv-10565<br><br>The Honorable Edgardo Ramos<br><br><u>CLASS ACTION</u> |
| QUANTUM BIOPHARMA LTD.,<br><br>   Plaintiff,<br><br>v.<br><br>CIBC WORLD MARKETS, INC., RBC DOMINION SECURITIES INC., and JOHN DOES 1 THROUGH 10,<br><br>   Defendants. | Case No. 1:24-cv-07972<br><br>The Honorable Edgardo Ramos |

**MEMORANDUM OF LAW IN SUPPORT OF QUANTUM BIOPHARMA LIMITED'S MOTION FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS <u>LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF LEAD COUNSEL</u>**

## **TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ................................................................................ 1

II. BACKGROUND ........................................................................................................ 4

III. ARGUMENT .............................................................................................................. 5

    A. The Court Should Appoint Quantum as Lead Plaintiff ..................................... 5

        1. Quantum's Motion is Timely ........................................................ 6

        2. Quantum is the Most Adequate Plaintiff ..................................... 6

            *a.* Quantum Has the Largest Financial Interest of Any Movant ............. 7

            *b.* Quantum Otherwise Satisfies Rule 23's Requirements ....................... 8

        3. Quantum Selected Well-Qualified Lead Counsel to Represent the Class .. 9

    B. The Related Actions Should be Consolidated ................................................... 11

IV. CONCLUSION ........................................................................................................... 12

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Francisco v. Abengoa, S.A.*,
   No. 15 CIV. 6279 (ER), 2016 WL 3004664 (S.D.N.Y. May 24, 2016) ....................................... 7

*Hom v. Vale, S.A.*,
   No. 1:15-CV-9539-GHW, 2016 WL 880201 (S.D.N.Y. Mar. 7, 2016)......................................... 9

*In re MF Glob. Holdings Ltd. Inv. Litig.*,
   310 F.R.D. 230 (S.D.N.Y. 2015)................................................................................................. 8

*In re Nortel Networks Corp. Sec. Litig.*,
   No. 01-CV-1855(RMB), 2002 WL 1492116 (S.D.N.Y. Feb. 4, 2002) ...................................... 10

*Johnson v. Celotex Corp.*,
   899 F.2d 1281 (2d Cir. 1990) ....................................................................................................11

*Kaplan v. Gelfond*,
   240 F.R.D. 88 (S.D.N.Y. 2007) ................................................................................................ 12

*Khunt v. Alibaba Grp. Holding Ltd.*,
   102 F. Supp. 3d 523 (S.D.N.Y. 2015) ........................................................................................ 8

*Nurlybaev v. ZTO Express (Cayman) Inc.*,
   No. 17CV06130LTSSN, 2017 WL 5256769 (S.D.N.Y. Nov. 13, 2017) .................................... 6

*Pipefitters Loc. No. 636 Defined Ben. Plan v. Bank of Am. Corp.*,
   275 F.R.D. 187 (S.D.N.Y. 2011) ...............................................................................................11

*Snyder v. Bauzun Inc.*,
   No. 1:19-CV-11290 (ALC), 2020 WL 5439763 (S.D.N.Y. Sept. 8, 2020) ................................ 6

**Statutes**

15 U.S.C. § 78u-4(a)(3)(A)................................................................................................................ 6
15 U.S.C. § 78u-4(a)(3)(B).......................................................................................1,2,6,7,8,10,11
15 U.S.C. §§ 78i, 78j(b), and 78t(a)................................................................................................. 1

**Rules**

Fed. R. Civ. P. 23............................................................................................................................. 8, 9
Fed. R. Civ. P. 42..........................................................................................................................1,3,11

**<u>Regulations</u>**

17 C.F.R. § 240.10 ............................................................................................................................. 1

Quantum BioPharma Limited f/k/a FDA Pharma, Inc. ("Quantum" or the "Company") respectfully submits this memorandum of law in support of its motion, pursuant to Section 21D of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), and Federal Rule of Civil Procedure ("Rule") 42 for an order (i) consolidating *Quantum Biopharma Ltd. v. CIBC World Markets Inc et al.*, Case No. 1:24-cv-07972 (S.D.N.Y) ("Related Action"), with this Action; (ii) appointing Quantum as Lead Plaintiff in this Class action pending against CIBC World Markets, Inc., CIBC World Markets Corp., The Canadian Imperial Bank of Commerce, RBC Dominion Securities, Inc., RBC Capital Markets, LLC, and Royal Bank of Canada (collectively, the "Defendants"); (iii) approving Quantum's selection of Freedman Normand Friedland LLP ("FNF") and Grant & Eisenhofer P.A. ("G&E") as co-Lead Counsel for the putative Class; and (iv) granting such other and further relief as the Court may deem just and proper.

I. **PRELIMINARY STATEMENT**

The securities class action complaint filed in this Action (ECF No. 1, the "Complaint") asserts claims against Defendants under Sections 9, 10(b), and 20(a) of the Exchange Act, 15 U.S.C. §§ 78i, 78j(b), and 78t(a), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder ("SEC Rule 10b-5"). ¶ 17.[1] These claims are asserted on behalf of all persons and entities who sold Quantum securities between January 6, 2021 and October 15, 2025, inclusive (the "Class Period"), and were damaged thereby (the "Class"). ¶ 122.

The Action arises from Defendants' years-long manipulative and illegal trading of Quantum securities. ¶¶ 22–89. Throughout the Class Period, Defendants repeatedly, and on a massive scale, placed and executed manipulative trades that were designed to, and did, artificially

---

[1] Unless otherwise specified, citations to "¶" or "¶¶" refer to the Complaint.

1

deflate the price of Quantum stock—an illegal trading practice known as "spoofing." *Id*. Specifically, Defendants submitted and then immediately canceled thousands of orders to trade Quantum common stock without any genuine intent to execute those trades. ¶¶ 61–62. These "baiting" orders served no legitimate economic purpose ("Baiting Orders"). Instead, they were designed to, and did, artificially depress the market price of Quantum stock by misleading market participants into believing that there was excess supply and/or volatility with respect to the Company's securities. ¶¶ 45–46. Defendants profited massively from their spoofing scheme, but Class members, who traded at prices artificially depressed by Defendants' manipulative conduct, were left holding the bag. *See, e.g.*, ¶¶ 113–19.

The PSLRA provides that the "most adequate plaintiff" shall serve as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). Under the PSLRA, the most adequate plaintiff is the movant with the "largest financial interest" in the relief in the litigation who also makes a *prima facie* showing of typicality and adequacy under Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). As set forth below, Quantum is the "most adequate plaintiff," including because it has the "largest financial interest" in this litigation of any movant. During the Class Period, Quantum sold more than **16 million** shares of Quantum stock through at-the-market offerings, for proceeds of over **$47 million**, at prices artificially depressed by Defendants' trading in violation of the federal securities laws. Declaration of Velvel (Devin) Freedman ("Freedman Declaration" or "Freedman Decl."), Ex. B.[2]

In addition to asserting the largest financial interest, Quantum readily satisfies the relevant requirements of Rule 23 because its claims are typical of all Class members and it will fairly and adequately represent the interests of the Class. As the issuer of the subject securities, Quantum not

---

[2] Filed herewith as Exhibits A and B to the Freedman Declaration, respectively, are Quantum's PSLRA-mandated Certification and a chart identifying the volume and price of Quantum's stock sales during the Class Period.

2

only possesses a real financial interest in the litigation, but it is deeply committed to protecting its shareholders and the integrity of its publicly traded securities. Indeed, as discussed below, the Related Action is the product of Quantum's diligent and thorough investigation into the facts alleged in the Complaint. Moreover, as a publicly traded company, Quantum has experience in supervising the work of outside counsel, including in connection with securities litigation. Quantum fully understands a lead plaintiff's obligations to the Class under the PSLRA and is willing and able to undertake those responsibilities to guarantee the vigorous prosecution of the Action. *See* Freedman Decl., Ex. B. Moreover, Quantum benefits from the resources of a dedicated staff that ensures close oversight of the litigation and outside counsel. As Lead Plaintiff, Quantum will bring those resources and experiences to bear on behalf of the Class. Accordingly, Quantum has both the incentive and ability to supervise and monitor counsel.

Quantum has also demonstrated its adequacy through its selection of FNF and G&E as Co-Lead Counsel for the putative Class. As discussed below, FNF and G&E are nationally recognized for their skill and experience in complex securities class action litigation. Accordingly, they are eminently qualified to prosecute the proposed Class action.

Based on its significant financial interest in this Action, and its demonstrated adequacy and typicality, the Court should appoint Quantum as Lead Plaintiff and otherwise grant its motion.

Finally, consolidation of this case with the Related Action pending before this Court is appropriate. The Related Action also asserts claims under Sections 9 and 10(b) of the Exchange Act, and SEC Rule 10b-5, based on substantially similar factual allegations concerning the same alleged spoofing conduct. Because these cases arise from the same alleged course of manipulative trading and involve common questions of law and fact, consolidation under Rule 42(a) is appropriate to promote judicial efficiency and avoid inconsistent rulings. *See* § III.B, *infra*.

## II.     BACKGROUND

Quantum is a biopharmaceutical company that develops innovative treatments targeting difficult-to-treat neurogenerative and metabolic disorders, as well as alcohol misuse disorders. ¶ 22. Among other products, Quantum developed Lucid-MS, a novel molecular compound in clinical trials aimed at treating multiple sclerosis and other neurodegenerative conditions, and "Unbuzzd," a nonprescription product formulated to alleviate the adverse effects of alcohol consumption. *Id.* Quantum securities have been publicly traded on the NASDAQ and Canadian Securities Exchange ("CSE") since May 2018 under the ticker "HUGE", and until August 15, 2025, the Company was known as FSD Pharma, Inc. ¶¶ 23–24.

Defendants CIBC World Markets Inc. ("CIBC World Markets") and RBC Dominion Securities Inc. ("RBC Securities") are Canadian corporations that are registered broker-dealers that execute securities transactions for their customers in Canada, and route orders to intermediary broker-dealers in the U.S. orders to be executed for its customers. ¶¶ 9, 11. CIBC World Markets Corp. ("CIBC World Markets USA") is a Delaware corporation registered with the SEC as a broker-dealer and operates the U.S. brokerage of the Canadian Imperial Bank of Commerce ("CIBC"), through which CIBC and its foreign brokerages routed trades to be placed and executed on U.S. exchanges. ¶ 10. RBC Capital Markets, LLC ("RBC Capital Markets") is a Minnesota company registered with the SEC as a broker-dealer and operates the U.S. brokerage of the Royal Bank of Canada ("RBC"), through which RBC and its foreign brokerages routed trades to be placed and executed on U.S. exchanges. ¶ 12. Defendants place and execute trades for their own accounts as well as for their customers.

As alleged in the Complaint, during the Class Period, Defendants placed fictitious Baiting Orders totaling **at least** 11,967,000 shares on Canadian stock exchanges and **at least** 2,293,191

4

shares on U.S. exchanges. ¶ 65. At nearly the same time, Defendants executed buy orders ("Executing Purchase Orders") for hundreds of thousands of Quantum shares at the artificially depressed prices, below the prevailing best offer that existed before Defendants placed the Baiting Orders, and then, after completing those transactions, cancelled all of the fictitious Baiting Orders. ¶¶ 46, 71–72. These "spoofing" orders to buy and sell Quantum stock artificially depressed its price, enriching Defendants at the Class's expense. ¶¶ 1, 75, 114–15. Specifically, acting either for their own account or executing customer trades, Defendants inundated exchange Limit Order Books with a large volume of Baiting Orders and then cancelled those Baiting Orders within seconds or even milliseconds after achieving the desired directional price movement. ¶¶ 62–63.

Defendants' continuous placement and cancellation of thousands of fictitious Baiting Orders served no legitimate market function. Instead, Defendants' trading was intended to and did transmit false and misleading price signals designed, among other things, to "trick" or "bait" other market participants into placing their own sell orders. ¶¶ 59–89. Through this scheme, Defendants perpetrated a fraud on the market and created a "pile-on" effect that depressed the price of Quantum's shares over time. *Id*. This manipulation benefited Defendants by allowing them to purchase Quantum shares at artificially deflated prices or by benefiting existing positions, whether for their customers' accounts or their own proprietary trading, and caused Plaintiff to sell shares at prices distorted by Defendants' misconduct. *Id*. Meanwhile, Class members were forced to transact in Quantum stock at prices artificially depressed by Defendants' misconduct, including Quantum, which sold more than 16 million shares during the Class Period. *See* Freeman Decl., Ex. B.

### III.     ARGUMENT

#### A.     The Court Should Appoint Quantum as Lead Plaintiff

The Court should appoint Quantum as Lead Plaintiff because it is the movant "most capable

5

of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA governs the lead plaintiff selection process in class actions arising under the federal securities laws. Under the PSLRA, the "most adequate plaintiff" is presumed to be the movant with the "largest financial interest in the relief sought by the class" who can make a *prima facie* showing of Rule 23's typicality and adequacy requirements. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). As set forth below, Quantum respectfully submits that it is the "most adequate plaintiff" and should be appointed Lead Plaintiff.

### 1. Quantum's Motion is Timely

Under the PSLRA, any Class member may move for appointment as Lead Plaintiff within 60 days of the publication of notice that the first action asserting substantially the same claims has been filed. See 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). On December 23, 2025, statutory notice of this Action was published on *Business Wire* alerting investors that a securities class action had been filed against Defendants and that any member of the proposed class could move the Court for appointment as Lead Plaintiff by February 23, 2026. *See* Freedman Decl. Ex. C. Because Quantum's motion has been filed by the statutory deadline, Quantum is eligible for appointment as Lead Plaintiff. *See Snyder v. Bauzun Inc.*, No. 1:19-CV-11290 (ALC), 2020 WL 5439763, at *3 (S.D.N.Y. Sept. 8, 2020).

### 2. Quantum is the Most Adequate Plaintiff

Quantum should be appointed Lead Plaintiff because it is the "most adequate plaintiff" to represent the Class. 15 U.S.C. § 78u-4(a)(3)(B)(i). Pursuant to the PSLRA, there is a rebuttable presumption that the "most adequate plaintiff" is the "person or group of persons" with the "largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Nurlybaev v. ZTO Express (Cayman) Inc.*, No.

17CV06130LTSSN, 2017 WL 5256769, at *1 (S.D.N.Y. Nov. 13, 2017). Quantum has the largest financial interest of any qualified movant. In addition, Quantum satisfies Rule 23's typicality and adequacy requirements, and possesses the necessary competency, diligence, and resources to effectively oversee and litigate this Action on behalf of the Class.

### a. Quantum Has the Largest Financial Interest of Any Movant

Quantum is the movant with the "largest financial interest in the relief sought by the class" and, accordingly, should be appointed Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii). Under the PSLRA, the size of a movant's financial stake in the litigation is by far the most significant factor in determining whether it is "most adequate." In determining a movant's financial stake, courts in this Circuit look to the volume of shares traded during the Class Period and "the net funds expended during the class period." *See Francisco v. Abengoa, S.A.*, No. 15 CIV. 6279 (ER), 2016 WL 3004664, at *4-*5 (S.D.N.Y. May 24, 2016). These factors are a particularly appropriate proxy for determining a movant's financial stake in the Action because, given the character of the alleged harm caused by Defendants' misconduct, a Class member's damages will depend significantly on the volume of that member's stock sales during the Class Period. Here, Quantum sold or otherwise disposed of more than 16 million shares of stock through at-the-market-offerings during the Class Period, for proceeds of over $47 million. *See* Freedman Decl. Ex. B. To the best of Quantum's knowledge, no other movant seeking Lead Plaintiff appointment has a larger interest in this litigation. Accordingly, Quantum has the largest financial interest of any qualified movant seeking lead plaintiff status and is presumptively the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii).

### *b.* **Quantum Otherwise Satisfies Rule 23's Requirements**

In addition to possessing the largest financial interest in the outcome of the litigation, Quantum otherwise satisfies Rule 23's requirements. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). On a motion to serve as lead plaintiff, a movant need only make a "preliminary showing of typicality and adequacy" under Rule 23. *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 536 (S.D.N.Y. 2015) (internal citation omitted). As detailed below, Quantum satisfies these requirements.

Quantum's claims are typical of the claims of the other sellers of Quantum common stock comprising the Class. Typicality "does not require factual identity between the named plaintiffs and the class members, only that the disputed issues of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *In re MF Glob. Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 236 (S.D.N.Y. 2015). Here, the claims of Quantum and of all other Class members arise from the same course of conduct and all turn on the same "disputed issues of law or fact"—principally, whether Defendants engaged in the trading scheme alleged in the Complaint, whether that scheme violated the federal securities law, and whether Defendants' conduct artificially depressed the price of Quantum stock during the Class Period. Like all Class members, Quantum (1) sold the Company's stock during the Class Period; (2) at prices artificially deflated by Defendants' spoofing scheme; and (3) was damaged thereby. As such, Quantum is a typical Class representative.

Quantum similarly satisfies Rule 23's adequacy requirement. Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In determining adequacy, courts consider whether "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the

8

proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Hom v. Vale, S.A.*, No. 1:15-CV-9539-GHW, 2016 WL 880201, at *6 (S.D.N.Y. Mar. 7, 2016) (citation omitted). Quantum easily satisfies this test because its substantial financial stake in the litigation provides it incentive to vigorously represent the Class's claims. Quantum's interests are aligned with those of the other Class members and are not antagonistic in any way. There are no facts to suggest any actual or potential conflict of interest between Quantum and other Class members. Quite the opposite. Quantum has a strong interest in protecting its shareholders and the integrity of its publicly traded securities from abusive trading that devalues its securities and impedes its ability to raise capital.[3]

Further, Quantum understands its obligation under the PSLRA to oversee and supervise the litigation separate and apart from counsel. As a publicly traded company with a sophisticated executive leadership and corporate board, Quantum is well-situated to meet these obligations.

Lastly, Quantum has demonstrated its adequacy through its substantial efforts to investigate the wrongdoing alleged in the *Related* Action. As part of that investigation, and as discussed further below, Quantum retained highly-qualified counsel to represent the Class, as well as sophisticated experts that assisted in identifying, characterizing, and quantifying Defendants' misconduct.

Accordingly, Quantum has made the requisite *prima facie* showing that it satisfies the relevant Rule 23 requirements.

### 3. Quantum Selected Well-Qualified Lead Counsel to Represent the Class

Pursuant to the PSLRA, a movant shall, subject to Court approval, select and retain counsel

---

[3] In the Related Action, Quantum asserts individual claims arising from Defendants' conduct predating the start of the Class Period. If the Court finds that the pendency of those claims creates a potential conflict with the Class, Quantum is prepared to forego them if the Court grants this motion.

to represent the class it seeks to represent, and the court should not disturb that selection unless it is necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also In re Nortel Networks Corp. Sec. Litig.*, No. 01-CV-1855(RMB), 2002 WL 1492116, at *1 (S.D.N.Y. Feb. 4, 2002) ("The Court should not disturb the lead plaintiff's choice of class counsel unless 'necessary to protect the interests of the class.'") (citation omitted).

FNF was appointed, and is serving, as lead counsel in *Peter D Arcy v. Sequential Brands Group, Inc. et al.*, No. 1:21-cv-07296 (S.D.N.Y.) and *In re Qutoutiao, Inc. Sec. Litig.*, No. 1:20-cv-06707 (S.D.N.Y.), and numerous other securities fraud and shareholder class actions across the country. *See* Freedman Decl., Ex. D. In addition, FNF was appointed and served, or is serving, as co-lead counsel in *Lowry v. RTI Surgical Holdings, Inc. et al.*, No. 1:20-cv-01939 (N.D. Ill.), *In re Cormedix Inc. Sec. Litig.*, No. 2:21-cv-14020 (D.N.J.), *Hartel v. Geo Grp., Inc. et. al.*, No. 9:20-cv-81063 (S.D. Fla.), and *Pasquinelli et al. v. HUMBL, LLC et al.,* (Del.)*. Id*. In both *Sequential Brands* and *RTI Surgical*, FNF recovered over 30% of plaintiffs' estimated damages–more than three times the typical recovery in securities fraud class action. And as co-lead counsel in an antitrust class action styled *Henry et al. v. Brown University et al.*, No. 1:22-cv-00125 (N.D. Ill.), FNF has recovered $319 million to-date for putative class members and most recently, defeated defendants' motion for summary judgment in its entirety.

G&E is among the preeminent securities class action law firms in the country. G&E has served as lead or co-lead counsel in several of the largest securities class actions in history, including: *In re Tyco Int'l Ltd. Sec. Litig.*, No. 02-cv-1335 (D.N.H.) ($3.2 billion recovery); *In re Pfizer Inc. Sec. Litig.*, No. 1:04-cv-9866 (S.D.N.Y.) ($486 million recovery); *In re Global Crossing, Ltd. Sec. Litig.*, No. 02-cv-910 (S.D.N.Y.) ($448 million recovery); *In re Refco, Inc., Sec. Litig.*, No. 05-cv-8626 (S.D.N.Y.) ($367 million recovery); *In re Marsh & McLennan Cos.*

10

*Sec. Litig.*, MDL No. 1744 (S.D.N.Y.) ($400 million recovery); and *In re Oxford Health Plans, Inc., Sec. Litig.*, MDL No. 1222 (S.D.N.Y.) ($300 million recovery). *See* Freedman Decl., Ex. E.

Thus, the Court may be assured that by granting this Motion, the putative Class will receive the legal representation of the highest caliber.

**B.      The Related Actions Should be Consolidated**

The PSLRA requires courts to consolidate related actions before appointing a lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii). Consolidation pursuant to Rule 42(a) is proper when actions involve common questions of law and fact. Fed. R. Civ. P. 42 (a); *see also Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990) (Rule 42(a) "empowers a trial judge to consolidate actions for trial when there are common questions of law or fact to avoid unnecessary costs or delay"). Here, this Action and the Related Action should be consolidated because they arise from the same facts and present substantially similar legal issues. *See Pipefitters Loc. No. 636 Defined Ben. Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 192 (S.D.N.Y. 2011) (consolidation is appropriate "if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation").

First, the nature of the alleged fraud is identical in both this case and the Related Action. Both actions allege that Defendants engaged in manipulative trading designed to artificially depress the price of Quantum stock, enriching Defendants at the Class's expense. *See* ¶ 1; Related Action at ECF No. 32 (the "*Quantum* Compl."), ¶¶ 3–4. Second, both cases assert violations of Sections 9 and 10(b) of the Exchange Act, and SEC Rule 10b-5, against CIBC World Markets and RBC Securities. *See* ¶¶ 129–143; *Quantum* Compl., ¶¶ 216–230. That this Action also asserts claims under Section 20(a) of the Exchange Act and names additional defendants, and that the Related Action includes a common law fraud claim, does not weigh against consolidation. *See*

11

*Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007), *reconsidered in irrelevant part sub nom. In re IMAX Sec. Litig.*, No. 06CIV6128, 2009 WL 1905033 (S.D.N.Y. June 29, 2009) ("Differences in causes of action [or] defendants…do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation."). Third, both this case and the Related Action present the same theory of recovery. In both cases, liability turns on whether Defendants engaged in spoofing that artificially depressed Quantum's stock price and caused harm. *See* Complaint, § VI; *Quantum* Compl., § V.G. Resolving these claims will require substantially the same proof, including evidence concerning Defendants' trading practices, market impact, scienter, and damages. Finally, while the Related Action also alleges some claims arising from Defendants' conduct that predates the start of the Class Period here, this does not weigh against consolidation. *See Kaplan*, 240 F.R.D. at 91. Moreover, as discussed above, Quantum is prepared to forego those individual claims should the Court find their pendency to be an obstacle to consolidation.

The related actions: (i) were both filed in this District; (ii) are pending before the same judge; and (iii) assert the same wrongdoing. For these reasons, and the reasons above, the related actions should be consolidated.

### IV.   CONCLUSION

For the foregoing reasons, Quantum respectfully requests that this Court consolidate the related actions; appoint it as Lead Plaintiff for the putative Class; approve its selection of FNF and G&E as Co-Lead Counsel for the putative Class; and grant any such further relief as the Court may deem just and proper.

Dated: February 23, 2026                    Respectfully submitted,

                                            By: */s/ Devin (Velvel) Freedman*
                                            Devin (Velvel) Freedman

Kyle Roche
Stephen Lagos
**FREEDMAN NORMAND FRIEDLAND LLP**
10 Grand Central
155 E. 44th Street, Suite 905
New York, New York 10017
Tel: (646) 350-0527
vel@fnf.law
kroche@fnf.law
slagos@fnf.law

Abraham Alexander
**GRANT & EISENHOFER, P.A.**
485 Lexington Avenue
New York, NY 10017
Tel: (646) 722-8500
Fax: (610) 722-8501
aalexander@gelaw.com

*Counsel for Proposed Lead Plaintiff Quantum BioPharma Limited and Proposed Lead Counsel for the Class*

James Wes Christian
**CHRISTIAN ATTAR**
1177 West Loop South, Suite 1700
Houston, TX 77027
Tel: (713) 659-7617

*Additional Counsel for Proposed Lead Plaintiff Quantum BioPharma Limited*

13