**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PAUL J. DURKACZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CIBC WORLD MARKETS, INC., CIBC WORLD MARKETS CORP., THE CANADIAN IMPERIAL BANK OF COMMERCE, RBC DOMINION SECURITIES INC., RBC CAPITAL MARKETS, LLC, and ROYAL BANK OF CANADA,<br><br>Defendants. | Case No. 1:25-cv-10565-ER<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO QUANTUM BIOPHARMA LIMITED'S MOTION FOR CONSOLIDATION OF RELATED ACTIONS AND APPOINTMENT AS LEAD PLAINTIFF**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................................7

PROCEDURAL BACKGROUND .........................................................................................9

ARGUMENT ............................................................................................................................10

    I.   Quantum's Request to Consolidate is Improper and Should be Denied ..........................10

    II.  Quantum Cannot Satisfy the Requirements to Serve As Lead Plaintiff. ..........................12

        A.  Quantum is Not an Adequate Lead Plaintiff...................................................................13

            1.  Quantum is Subject to Unique Defenses Concerning its Own Mismanagement and Misconduct .................................................................................................................15

            2.  Quantum is Subject to a Unique Statute of Limitations Defense .........................16

            3.  Quantum is Also Subject to Unique *Forum Non Conveniens* and Jurisdictional Defenses...................................................................................................................18

            4.  Quantum is Subject to a Unique Reliance Defense ...............................................18

        B.  Quantum is Not a Typical Plaintiff...............................................................................19

CONCLUSION........................................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alki Partners, L.P. v. Vatas Holding GmbH*,
769 F. Supp. 2d 478 (S.D.N.Y. 2011), *aff'd sub nom. Alki Partners, L.P. v. Windhorst*, 472 F. App'x 7 (2d Cir. 2012)..................................................................18

*Andrada v. Atherogenics, Inc.*,
2005 WL 912359 (S.D.N.Y. Apr. 19, 2005).........................................................20

*ATSI Commc'ns., Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007).................................................................................18

*Basic v. Levinson*,
485 U.S. 224 (1988)............................................................................................19

*Batter v. Hecla Mining Co.*,
2020 WL 1444934 (S.D.N.Y. Mar. 25, 2020).......................................................14

*Beck v. Status Game Corp.*,
1995 WL 422067 (S.D.N.Y. July 14, 1995)..........................................................19

*Bosch v. Credit Suisse Grp. AG*,
2022 WL 4285377 (E.D.N.Y. Sep. 12, 2022)........................................................13

*Christiansen v. Spectrum Pharms., Inc.*,
2025 WL 2234041 (S.D.N.Y. Aug. 4, 2025).........................................................15

*City of Pontiac Gen. Emps. Ret. Sys. v. Lockheed Martin Corp.*,
844 F. Supp. 2d 498 (S.D.N.Y. 2012)..............................................................7, 17

*Damri v. LivePerson, Inc.*,
2024 WL 1242510 (S.D.N.Y. Mar. 22, 2024).........................................................7

*Di Scala v. ProShare Ultra Bloomberg Crude Oil*,
2020 WL 7698321 (S.D.N.Y. Dec. 28, 2020)..................................................13, 15

*EMA Fin. LLC v. NFusz, Inc.*,
444 F. Supp. 3d 530 (S.D.N.Y. 2020) ..................................................................21

*Faris v. Longtop Fin. Techs. Ltd.*,
2011 WL 4597553 (S.D.N.Y. Oct. 4, 2011)..........................................................15

*Finocchiario v. NQ Mobile, Inc.*,
2016 WL 7031613 (S.D.N.Y. Dec. 1, 2016) ..........................................................7

*Grace III v. Perception Tech. Corp.*,
128 F.R.D. 165 (D. Mass. 1989) ..................................................................20

*Gross v. AT&T Inc.*,
2019 WL 3500496 (S.D.N.Y. July 31, 2019) ..............................................14

*Guo v. Tyson Foods, Inc.*,
2023 WL 3765052 (E.D.N.Y. June 1, 2023) ................................................13

*Gurary v. Winehouse*,
190 F.3d 37 (2d Cir. 1999) ..........................................................................18

*HSBC Bank USA, N.A. v. Francis*,
214 A.D.3d 58 (2d Dep't. 2023) ............................................................11, 16

*IBEW Loc. 90 Pension Fund v. Deutsche Bank AG*,
2013 WL 5815472 (S.D.N.Y. Oct. 29, 2013) ..............................................20

*In re Hebron Tech. Co., Ltd. Sec. Litig.*,
2020 WL 5548856 (S.D.N.Y. Sept. 16, 2020) ..................................13, 14, 18

*In re Indep. Energy Holdings PLC Sec. Litig.*,
210 F.R.D. 467 (S.D.N.Y. 2002) ................................................................19

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
2008 WL 2941215 (S.D.N.Y. July 30, 2008) ..............................................15

*In re Network Assocs., Inc. Sec. Litig.*,
76 F. Supp. 2d 1017 (N.D. Cal. 1999) ........................................................18

*In re New Oriental Educ. & Tech. Grp. Sec. Litig.*,
293 F.R.D. 483 (S.D.N.Y. 2013) ................................................................11

*In re VEON Ltd. Sec. Litig.*,
2022 WL 1284547 (S.D.N.Y. Apr. 29, 2022) ..........................................7, 17

*Isquith by Isquith v. Caremark Int'l, Inc.*,
136 F.3d 531 (7th Cir. 1998) ......................................................................22

*Johnson v. Celotex Corp.*,
899 F.2d 1281 (2d Cir. 1990) ......................................................................11

*Kamdem-Ouaffo v. Pepsico, Inc.*,
314 F.R.D. 130 (S.D.N.Y. 2016) ................................................................12

*Katz v. Marex Group PLC*,
2026 WL 265496 (S.D.N.Y. Feb. 2, 2026) ............................................11, 12

*Lampkin v. UBS Fin. Servs.*,
   925 F.3d 727 (5th Cir. 2019) ............................................................................21

*Landry v. Price Waterhouse Chartered Accountants*,
   123 F.R.D. 474 (S.D.N.Y. 1989) ......................................................................20

*Lang v. Tower Grp. Int'l, Ltd.*,
   2014 WL 12779212 (S.D.N.Y. June 17, 2014) ............................................20, 21

*LaSala v. Needham & Co., Inc.*,
   399 F. Supp. 2d 421 (S.D.N.Y. 2005) ...............................................................12

*Markewich v. Ersek*,
   98 F.R.D. 9 (S.D.N.Y. 1982) ............................................................................20

*May v. Barclays PLC*,
   2025 WL 887300 (S.D.N.Y. Mar. 21, 2025)*, reconsideration denied,* 2025
   WL 1569633 (S.D.N.Y. June 3, 2025) ...............................................................22

*McCormack v. Dingdong (Cayman) Ltd.*,
   2022 WL 17336586 (S.D.N.Y. Nov. 30, 2022).................................................13

*Morrison v. National Australian Bank Ltd.*,
   561 U.S. 247 (2010)...........................................................................................18

*Osorio-Franco v. Spectrum Pharms., Inc.*,
   2023 WL 2586909 (S.D.N.Y. Mar. 21, 2023) ...................................................14

*Powell v. American Export Lines, Inc.*,
   146 F. Supp. 417 (S.D.N.Y. 1956) ....................................................................12

*Quantum Biopharma Ltd*. v. *CIBC World Markets Inc. et al.*,
   Case No. 1:24-cv-07972 (S.D.N.Y. Oct. 20, 2024)........................................*passim*

*Ret. Sys. v. MBIA, Inc.*,
   637 F.3d 169 (2d Cir. 2011)...............................................................................17

*Rice v. Genworth Fin. Inc.*,
   2017 WL 3699859 (E.D. Va. Aug. 25, 2017)....................................................15

*Rocco v. Nam Tai Electronics, Inc.*,
   245 F.R.D. 131 (S.D.N.Y. Aug. 21, 2007) ........................................................14

*Rodriguez v. DraftKings Inc.*,
   2021 WL 5282006 (S.D.N.Y. Nov. 12, 2021)...................................................13

*Schaffer v. Horizon Pharma Plc.*,
   2016 WL 3566238 (S.D.N.Y. June 17, 2016) ...................................................14

*Steginsky v. Xcelera, Inc.*,
   2015 WL 1036985 (D. Conn. Mar. 10, 2015), *aff'd*, 658 F. App'x 5 (2d Cir.
   2016) .................................................................................................................................19

*Tri-Star Farms Ltd. v. Macaroni, PLC*,
   225 F. Supp. 2d 567 (W.D. Penn. 2002) ..........................................................................18

*Ultra Int'l Music Pub., LLC v. Sony Music Ent.*,
   2025 WL 670842 (S.D.N.Y. Mar. 3, 2025) .........................................................................7

**Statutes**

Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4 ...............................................*passim*

**Rules**

Federal Rule of Civil Procedure 23 ......................................................................................8, 19

Federal Rule of Civil Procedure 42 ..............................................................................8, 10, 11

**Other Authorities**

Stock Information, Quantum Biopharma,
   https://www.quantumbiopharma.com/stock-information (last visited Mar. 8,
   2026) .................................................................................................................................16

CIBC World Markets Inc., CIBC World Markets Corp., the Canadian Imperial Bank of Commerce (collectively "CIBC") and RBC Dominion Securities Inc., RBC Capital Markets, LLC, and Royal Bank of Canada (collectively "RBC" and, together with CIBC, the "Defendants"), respectfully submit this memorandum of law in opposition to Plaintiff Quantum Biopharma Limited's ("Quantum" or "Plaintiff") motion for consolidation of related actions and appointment as lead plaintiff ("Motion") (Dkt. Nos. 32-33).

## PRELIMINARY STATEMENT

It is rare for Defendants in a securities class action to oppose a motion for consolidation and appointment of lead plaintiff. But this is no ordinary case. Quantum seeks to appoint itself lead plaintiff in a class of *its own shareholders* to pursue class-wide damages from stock-price declines caused by its own mismanagement. Quantum's Motion is a brazen attempt to leverage the lead-plaintiff-appointment process to leapfrog a pending motion to dismiss in a case asserting nearly identical claims previously filed by Quantum on an individual basis, and improperly expand that action to include class claims that it never even attempted to plead.[1]

The putative class action ("Class Action") Quantum now seeks to lead was originally filed by Paul Durkacz, who, by his unique surname and his conduct, appears to be a relative of Quantum's founder and Board co-chairman Anthony Durkacz.[2] The Complaint alleges spoofing

---

[1] While it may be "uncommon" for defendants to challenge a lead plaintiff application, multiple courts in this District have held that case law "permits defendants to be heard on this point." *Damri v. LivePerson, Inc.*, 2024 WL 1242510, at *2 n.1 (S.D.N.Y. Mar. 22, 2024); *see also City of Pontiac Gen. Emps. Ret. Sys. v. Lockheed Martin Corp.*, 844 F. Supp. 2d 498, 501 n.3 (S.D.N.Y. 2012) (finding "defendants do have standing" to challenge a lead plaintiff appointment upon statutory analysis of PSLRA); *Finocchario v. NQ Mobile, Inc.*, 2016 WL 7031613, at *2 (S.D.N.Y. Dec. 1, 2016) ("several courts have held that defendants do have standing to be heard during the [lead plaintiff] appointment process" and agreeing that "whether such standing is viewed as formal or not, this Court welcomes submissions that inform its decision"); *see also In re VEON Ltd. Sec. Litig.*, 2022 WL 1284547, at *6 n.7 (S.D.N.Y. Apr. 29, 2022) (similar); *Ultra Int'l Music Pub., LLC v. Sony Music Ent.*, 2025 WL 670842, at *3 n.3 (S.D.N.Y. Mar. 3, 2025) (similar).

[2] *See* class action complaint ("Complaint" or "Compl.") filed on December 19, 2025. (Dkt. No. 1).

claims against CIBC and RBC that Quantum admits are "identical" to its individual claims in *Quantum Biopharma Ltd*. v. *CIBC World Markets Inc. et al.*, Case No. 1:24-cv-07972 (S.D.N.Y.) (the "Original Action"), currently pending before this Court on Defendants' motion to dismiss ("MTD"). Rather than accept the Court's forthcoming ruling on the MTD—which has been fully briefed for over six months—Quantum seeks to "consolidate" these cases, giving itself another opportunity to file a new complaint and evade the pending MTD. The Court should reject this gamesmanship and deny the Motion. Alternatively, because the fully-briefed MTD in Quantum's prior case addresses substantially identical claims and could moot the instant action entirely, the Court should hold the Motion in abeyance and/or stay the Class Action pending a decision on the MTD.

*First*, consolidation should be denied because the Original Action is subject to a meritorious pending motion to dismiss. Quantum's request for consolidation is a transparent attempt to retool its Complaint from the Original Action again, and to do so before the Court renders its decision on the MTD. That request is procedurally improper. Consolidation here would result in significant prejudice to Defendants, produce unnecessary repetition and confusion, and undermine Rule 42(a)'s stated objectives of efficiency and judicial economy. The Court should deny consolidation or, at the very least, hold the Motion in abeyance or stay the Class Action pending a decision on the MTD, which could moot this case entirely.

*Second*, there is no statutory authority, case law, or legislative history supporting Quantum's extraordinary request—as an issuer—to represent its own stockholders in a class action lawsuit. But even if such support existed, Quantum fails to meet the adequacy and typicality requirements to be appointed lead plaintiff under the Private Securities Litigation Reform Act ("PSLRA") and Federal Rule of Civil Procedure 23 ("Rule 23"). Quantum cannot satisfy the

adequacy requirement because it is subject to multiple unique and overarching defenses, including: (a) that its own mismanagement, misconduct, and insider status caused its stock price to decline—a unique defense that further casts doubt on whether its interests are aligned with any putative class member; (b) a statute of limitations defense; (c) jurisdictional and *forum non conveniens* defenses; and (d) a reliance defense. Quantum similarly fails to meet the typicality requirement because, as an issuer transacting in its own stock with inside information, it engaged in transactions materially different from other class members, including dilutive share issuances that drove down the value of Quantum's stock.  Beyond Quantum's improper attempt to avoid dismissal of the Original Action, these additional reasons mandate denial of this unprecedented request to be appointed lead plaintiff in a class made up of its own shareholders.

## PROCEDURAL BACKGROUND[3]

On October 20, 2024, Quantum filed its initial complaint in the Original Action. (OA Dkt. No. 1). After Defendants moved to dismiss, Quantum filed an amended complaint on May 1, 2025. (OA Dkt. No. 32) ("Amended Complaint" or "Am. Compl."). On June 16, 2025, Defendants moved to dismiss the Amended Complaint, and briefing was completed by September 1, 2025. (OA Dkt. Nos. 35-41).

On December 19, 2025, Plaintiff Paul J. Durkacz filed this Class Action, adding CIBC and RBC's U.S. affiliates as named defendants. (Dkt. No. 1). The very same day, despite the pendency of its own individual action and Defendants' MTD, Quantum issued a press release regarding the Durkacz class action, stating it "intend[ed] to seek appointment as a lead plaintiff in this class

---

[3] For a full accounting of the facts underlying these two cases, which Quantum states are "based on substantially similar factual allegations concerning the same alleged spoofing conduct" Defendants respectfully refer the Court to the facts set forth in their MTD briefing from the Original Action. (OA Dkt. No. 36).

action in order to assist in protecting its shareholders."[4] On February 23, 2026, Quantum filed the present Motion. (Dkt. No. 33). Upon filing the Motion, Quantum announced that it had "launched" the Class Action.[5] Remarkably, Paul Durkacz himself did not apply to be lead plaintiff of the Class Action he filed.

## ARGUMENT

**I.    Quantum's Request to Consolidate is Improper and Should be Denied**

The "PSLRA requires courts to consolidate related actions before appointing a lead plaintiff." (Mot. at 11) (citing 15 U.S.C. § 78u-4(a)(3)(B)(ii)). Nevertheless, Quantum fails to establish that consolidation is warranted here.

Quantum frames its request as a standard Rule 42(a) consolidation application. (Mot. at 11). In reality, Quantum is attempting to amend its complaint in the Original Action by initiating this litigation and then stepping in as lead plaintiff. Quantum is already engaged in active litigation against Defendants involving the "same facts" and claims the nature of the alleged fraud in the two proceedings is "identical." (*Id.*). Indeed, the MTD in the Original Action has been fully briefed and pending before this Court for six months.

Despite this, Quantum "launched" this Class Action as a second bite at the apple. *See supra* note 5. Quantum committed itself to the Class Action and declared that it is "prepared to forego those individual claims [in the Original Action] should the Court find their pendency to be an obstacle to consolidation." (Mot. at 12). In other words, Quantum is willing to abandon its complaint from the Original Action—which was already amended once and has a fully briefed

---

[4] Ex A (Source: Quantum BioPharma), World Renowned Law Firm Grant & Eisenhofer Files Class Action Lawsuit Against Canadian Banks CIBC and RBC Alleging Illegal Stock Market Manipulation of Quantum BioPharma Shares, (Dec. 19, 2025).

[5] Ex. B, Quantum Biopharma (@quantumbp), X (formerly Twitter) (Jan. 13, 2026, 10:16 AM).

MTD pending against it—for a fresh start in a newly filed case with yet another revised complaint. Such a subversion of procedural requirements and norms should not be accepted, and Quantum cites no authority for doing so.

Quantum claims Rule 42 favors consolidation, but "consolidation is not mandatory under the PSLRA." *In re New Oriental Educ. & Tech. Grp. Sec. Litig.*, 293 F.R.D. 483, 487 (S.D.N.Y. 2013). District courts have "broad discretion to determine whether consolidation is appropriate" and will consider "both equity and judicial economy" in assessing whether to do so. *Katz v. Marex Group PLC*, 2026 WL 265496, at *3 (S.D.N.Y. Feb. 2, 2026) (internal citations omitted). In exercising its discretion, the Second Circuit requires district courts to consider whether "the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications . . . the burden on parties, witnesses, and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits . . . and the relative expense to all concerned." *Id.* (quoting *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285 (2d Cir. 1990)).

Every factor here weighs against consolidation. CIBC and RBC have already expended significant resources moving to dismiss the Original Action *twice*, with the merits still undecided. *See HSBC Bank USA, N.A. v. Francis*, 214 A.D.3d 58 (2d Dep't. 2023) (consolidation should be denied where one case is subject to a meritorious motion to dismiss). Moreover, as set out below, Quantum as issuer is differently situated than other class members, and consolidation would confuse the issues—particularly several key defenses specific to Quantum but not its shareholders. *See id.* at 58 ("The purpose of consolidation is not to provide a party with a procedural end run around a legal defense applicable to one of the actions"); *see infra* Section II (discussing how Quantum is not an adequate lead plaintiff and its claims are not typical of a putative class). Additionally, consolidation would require Defendants to employ additional resources and incur

increased expenses litigating Quantum's Class Action, which is at a far earlier stage of litigation than the Original Action, "delaying rather than expediting" the disposition of these cases. *Kamdem-Ouaffo v. Pepsico, Inc.*, 314 F.R.D. 130, 137 (S.D.N.Y. 2016) (denying consolidation in such circumstances). To the extent, as Quantum hopes, consolidation would result in a new complaint altogether—without any decision on the pending MTD—the Court should exercise its discretion and deny consolidation because consolidating would result in an inequitable outcome. *Katz*, 2026 WL 265496, at *3 (citations omitted).

For these reasons, the Court should deny consolidation. That said, the Court need not reach these issues at this time if, in the interests of conserving judicial resources, it either holds the Motion in abeyance or stays this Class Action pending resolution of the MTD in the Original Action, which addresses nearly identical claims. The Court's forthcoming decision could moot this action entirely.[6]

## II.    Quantum Cannot Satisfy the Requirements to Serve As Lead Plaintiff.

If the Court holds the Motion in abeyance or enters a stay, it need not address Quantum's lead plaintiff application.[7] But if the Court opts to address this aspect of Quantum's Motion now, it should be denied because Quantum cannot satisfy the PSLRA's requirements for lead plaintiff appointment.

Because "[c]ongress enacted the PSLRA [] in response to perceived abuses in securities fraud class actions . . . the PSLRA provides for extensive judicial involvement in the process of

---

[6] The "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its own docket with economy of time and effort for itself, for counsel, and for litigants." *LaSala v. Needham & Co., Inc.,* 399 F. Supp. 2d 421, 427 (S.D.N.Y. 2005). Where, as here, "there is another action pending between the same parties, seeking the same relief" that is subject to a pending motion to dismiss, "further proceedings in the instant action . . . should be stayed" until the Original Action is "dismissed, withdrawn, or determined[.]" *Powell v. American Export Lines, Inc.*, 146 F. Supp. 417, 418 (S.D.N.Y. 1956).

[7] Notably, no other shareholder (including Mr. Durkacz) has sought appointment—the only motion the Court needs to stay is Quantum's.

selecting a lead plaintiff and lead counsel in a securities class action." *McCormack v. Dingdong (Cayman) Ltd.*, 2022 WL 17336586 at *6 (S.D.N.Y. Nov. 30, 2022) (internal quotations and citations omitted). Even when no other candidates have applied to be lead plaintiff, courts are cautioned against "rubber stamp[ing] motions brought by inadequate plaintiffs, even if unopposed." *Id.* at *6; *see Guo v. Tyson Foods, Inc.*, 2023 WL 3765052, at *2 (E.D.N.Y. June 1, 2023) (proposed lead plaintiff not automatically entitled to appointment even when its application is unopposed); *Bosch v. Credit Suisse Grp. AG*, 2022 WL 4285377, at *6 (E.D.N.Y. Sep. 12, 2022) (collecting cases). Moreover, there is nothing in the legislative history of the PSLRA that indicates that Congress intended or even contemplated that issuers would represent their own stockholders in class action lawsuits.

### A.  Quantum is Not an Adequate Lead Plaintiff

To make a *prima facie* showing of adequacy, a lead plaintiff must demonstrate that it "does not have interests that are antagonistic to the class that [it] seeks to represent" and that it "has retained counsel that is capable and qualified to vigorously represent the interests of the class that [it] seeks to represent." *Rodriguez v. DraftKings Inc.*, 2021 WL 5282006, at *8 (S.D.N.Y. Nov. 12, 2021). Courts apply a rebuttable presumption that the most adequate plaintiff is the investor with "the largest financial interest in the relief sought by the class" and who otherwise satisfies typicality and adequacy requirements. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

This presumption may be rebutted by proof that the plaintiff "is subject to unique defenses," meaning defenses that could "divert attention from the substance of the basic claim and needlessly imperil the claims of the class," such that the plaintiff is "incapable of adequately presenting the class." *Id.* §78u-4(a)(B)(iii)(II); *In re Hebron Tech. Co., Ltd. Sec. Litig.*, 2020 WL 5548856, at *7 (S.D.N.Y. Sept. 16, 2020) (internal quotations and citations omitted); *Di Scala v.*

*ProShare Ultra Bloomberg Crude Oil*, 2020 WL 7698321, at *4 (S.D.N.Y. Dec. 28, 2020) (denying lead plaintiff appointment where "factual issues unique to [the presumptive lead plaintiff] would likely threaten to become the focus of the litigation"); *see also Rocco v. Nam Tai Electronics, Inc*., 245 F.R.D. 131, 135 (S.D.N.Y. Aug. 21, 2007) ("[C]lass representatives who are subject to unique defenses have a likely potential to be the focus of the litigation and . . . divert attention from the substance of the basic claim"); *Schaffer v. Horizon Pharma Plc*., 2016 WL 3566238, at *3 (S.D.N.Y. June 17, 2016) (collecting cases rejecting presumptive lead plaintiffs faced with unique defenses).

Because "even ultimately unsuccessful unique defenses" may divert attention from the substance of the claim, courts need not conclude that a unique defense is likely to or will succeed "[b]efore disqualifying a potential lead plaintiff on that basis." *In re Hebron Tech. Co., Ltd. Sec. Litig.*, 2020 WL 5548856, at *7 (quotation omitted). "Rather, many courts have rejected appointments of lead plaintiffs based on *potential* risks." *Gross v. AT&T Inc*., 2019 WL 3500496, at *2 (S.D.N.Y. July 31, 2019) (emphasis in original) (quotations and citations omitted); *see also Batter v. Hecla Mining Co*., 2020 WL 1444934, at *7 (S.D.N.Y. Mar. 25, 2020) (Defendants "need not establish a plaintiff's inadequacy with absolute certainty, instead it is enough that it presents a colorable risk of inadequacy").

Even accepting Quantum's assertion that it has the "largest financial interest" (Mot. at 7), Quantum is inadequate because it is subject to multiple unique defenses that call into question its ability to protect the class and distract from issues relevant to all other putative class members. *See Osorio-Franco v. Spectrum Pharms., Inc.*, 2023 WL 2586909, at *1-3 (S.D.N.Y. Mar. 21, 2023) (declining to appoint lead plaintiff candidates with the largest alleged losses because presumption of adequacy was overcome by vulnerability to unique defenses).

1.  **Quantum is Subject to Unique Defenses Concerning its Own Mismanagement and Misconduct**

The MTD details the numerous ways in which Quantum's stock price decline was the result of its own mismanagement. Quantum's SEC filings and other public statements show annual losses in the tens of millions, no revenue, shifting business ventures, costly shareholder litigation, proxy battles, and frequent and substantial issuances of additional, dilutive shares—all of which, by Quantum's own admission, negatively impacted Quantum's share price. (*See* MTD at 8). These defenses would similarly headline any motion to dismiss the Class Action and continue to be the focal point of subsequent discovery and summary judgment motions. *Di Scala*, 2020 WL 7698321, at \*4 (denying lead plaintiff appointment where "factual issues unique to [the presumptive lead plaintiff] would likely threaten to become the focus of the litigation") (internal citations omitted). Such factors clearly put Quantum at odds with any putative investor class, rendering it an inadequate lead plaintiff. *Christiansen v. Spectrum Pharms., Inc.*, 2025 WL 2234041, at \*2 (S.D.N.Y. Aug. 4, 2025) (courts consider whether there is "any conflict between the proposed lead plaintiff and the members of the class" to determine adequacy); *see also Rice v. Genworth Fin. Inc.,* 2017 WL 3699859, at \*12 (E.D. Va. Aug. 25, 2017) (declining to appoint lead plaintiff in securities fraud action that had filed separate derivative action because "the objectives of the derivative action are at odds with the objectives in this action").

Quantum's own misconduct, as detailed in public filings, further demonstrates why Quantum should not serve as a fiduciary for other putative class members. Prior "determinations of wrongdoing" are relevant to the adequacy determination, *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2008 WL 2941215, at \*6 (S.D.N.Y. July 30, 2008), even those yet unproven, *see, e.g.*, *Faris v. Longtop Fin. Techs. Ltd.*, 2011 WL 4597553, at \*8 (S.D.N.Y. Oct. 4, 2011). In addition, Quantum's dubious litigation tactics also call into question its adequacy as lead plaintiff. As noted

above, Durkacz filed the Class Action only for Quantum immediately to move for lead plaintiff status, presumably to avoid adjudication of the MTD in the Original Action and win another attempt to amend its complaint before this Court. These sorts of procedural end-runs are patently improper. *HSBC Bank USA, N.A. v. Francis*, 214 A.D.3d 58, 64 (2d Dep't. 2023).

Nor are Quantum's modified allegations in the Class Action materially consistent with the allegations in the Original Action. In fact, the Class Action allegations call into question the integrity of Quantum's investigation and basis for bringing these serious allegations against Defendants in the first place. The two cases have wildly disparate tallies of shares sold, issued, or otherwise disposed of by Quantum at purportedly artificially depressed prices. (*Compare* Mot. at 7 (16 million shares) *with* Am. Compl. ¶ 208 (90 million shares) (OA Dkt. No. 32)). This discrepancy is not explained by additional issuances, as there are only 3.84 million Quantum shares currently outstanding.[8] Nor is it likely the result of the truncated relevant period in the Class Action, which still includes 2021—during which Quantum made substantial share offerings, *see*, *e.g.*, MTD Ex. 5 ($20,000,000 worth of shares issued)—and when Quantum alleged selling the largest volume of purportedly manipulated shares. *See* Am. Compl. ¶ 117 (sold 674,639 shares on Feb. 10, 2021); ¶ 197 (sold 1,365,775 shares on Feb. 11, 2021); ¶ 209 (chart reflecting much larger share volumes sold in 2021 than 2020).

### 2. Quantum is Subject to a Unique Statute of Limitations Defense

As Defendants explained in their MTD, *see* MTD at 40-43; MTD Ex. 11[9] at 10 (Form 6-K, Ex. 99.2 (Nov. 2, 2024)), Quantum was on inquiry notice of its claims in 2021, and had access

---

[8] *See* Stock Information, Quantum Biopharma, https://www.quantumbiopharma.com/stock-information (last visited Mar. 8, 2026).

[9] Numbered exhibit references are to the exhibits attached to the Declaration of Kevin P. Broughel in Support of Defendants' MTD. *Quantum v. CIBC et al.*, No. 1:24-CV-07972, OA Dkt. No. 37.

to the same publicly available market data that underpins not only this Class Action, but also the Amended Complaint in the Original Action. Nonetheless, Quantum inexplicably waited until late December 2025—more than four years after it first suspected share price manipulation—to bring these claims. *See*, *e.g.*, *City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 175 (2d Cir. 2011) (a fact is "deemed 'discovered' [when] a reasonably diligent plaintiff would have sufficient information about that fact to adequately plead it in a complaint").

Accordingly, Quantum's discovery of a supposed imbalance in its stock as early as 2021, more than four years before the Class Action was filed, subjects it to a unique timeliness defense. Failure to timely bring suit is sufficient to disqualify a lead plaintiff candidate. *See*, *e.g.*, *In re Veon Ltd. Sec. Litig.*, 2022 WL 1284547, at *4 (S.D.N.Y. Apr. 29, 2022) (presumptive lead plaintiff group "unable to adequately represent the class because [its] class claims are barred by the statute of limitations."). Rather than contesting any of these facts, Quantum concedes in its Motion that it undertook "substantial efforts to investigate" the purported wrongdoings as part of this action and "retained . . . sophisticated experts that assisted in identifying, characterizing, and quantifying" its allegations. (Mot. at 9). These facts highlight one of several stark differences between Quantum and the putative investor class: Quantum's distinct position as issuer provided it with unparalleled access to data and allowed it to hire consultants and contractors to investigate purported market imbalance as early as 2021. Even affording Quantum every reasonable inference, Quantum's actual knowledge of the alleged fraud based on its reportedly fruitful, multi-year investigations constitutes a unique defense that separates Quantum from the putative class and is certain to distract from issues common to the class. These facts warrant a denial of Quantum's Motion. *See Veon*, 2022 WL 1284547, at *4.

### 3. Quantum is Also Subject to Unique *Forum Non Conveniens* and Jurisdictional Defenses

As a Canadian plaintiff, Quantum faces unique personal jurisdiction, extraterritoriality under *Morrison v. National Australian Bank Ltd.,* 561 U.S. 247, 267 (2010), and *forum non conveniens* defenses. *See* MTD 15-20; *In re Network Assocs., Inc. Sec. Litig.*, 76 F. Supp. 2d 1017, 1030 (N.D. Cal. 1999) (refusing to appoint "foreign organizations" as lead plaintiff); *Tri-Star Farms Ltd. v. Macaroni, PLC*, 225 F. Supp. 2d 567, 573 n.7 (W.D. Penn. 2002) (foreign purchasers "cannot bootstrap their losses to these independent American losses to justify jurisdiction"). In contrast, the Class would presumably include U.S. or other non-Canadian shareholders (although the Class Action makes no mention of Mr. Durkacz' residence, and no other putative class members have emerged as yet).

### 4. Quantum is Subject to a Unique Reliance Defense

Quantum's decision to trade despite believing its stock was being manipulated subjects it to a unique reliance defense. *See Hebron*, 2020 WL 5548856, at *7 (candidates "subject to an *arguable* defense of non-reliance on the market" found inadequate). Pleading market manipulation requires "reliance on an assumption of an efficient market free of manipulation." *ATSI Commc'ns., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 101 (2d Cir. 2007). *See Alki Partners, L.P. v. Vatas Holding GmbH*, 769 F. Supp. 2d 478, 493 (S.D.N.Y. 2011) (plaintiffs aware of manipulation "cannot establish that they relied on [a] market free of manipulation"), *aff'd sub nom. Alki Partners, L.P. v. Windhorst*, 472 F. App'x 7 (2d Cir. 2012); *Gurary v. Winehouse*, 190 F.3d 37, 45 (2d Cir. 1999) (affirming dismissal where plaintiff could not establish trading "in ignorance of the fact that the price was affected by the alleged manipulation").

Quantum claims entitlement to "a presumption of reliance under the fraud-on-the-market doctrine." (Compl. ¶ 121). This presumption is based on the theory that "[a]n investor who buys

or sells stock at the price set by the market does so in reliance on the integrity of that price." *Basic v. Levinson*, 485 U.S. 224, 247-48 & n.27 (1988). This presumption, however, is rebuttable. *Id*. at 248.

Whether an investor's reliance on the market was reasonable is relevant to any class member. But Quantum faces a unique defense: given its actual knowledge from its investigations, it either could not have relied on market price integrity, or it made misleading public statements. This Quantum-specific defense will distract from class-wide issues. *See In re Indep. Energy Holdings PLC Sec. Litig.,* 210 F.R.D. 476, 482-83 (S.D.N.Y. 2002) (denying appointment because "non-reliance" defense "would shift the focus of the litigation to the prejudice of the class members"); *Steginsky v. Xcelera, Inc*., 2015 WL 1036985, at *7 (D. Conn. Mar. 10, 2015) (declining to appoint representative who "firmly believed a fraud was afoot"), *aff'd*, 658 F. App'x 5 (2d Cir. 2016).

### B.  Quantum is Not a Typical Plaintiff

Under the PSLRA, Quantum must also meet a "typicality" requirement. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); Rule 23(a)(3). But as the issuer, Quantum lacks typicality because, as the ultimate insider, it had unparalleled access to non-public information, making Quantum an atypical plaintiff. While Quantum cites no precedent for its extraordinary request to be appointed lead plaintiff, it is clear in analogous instances that this Court will reject lead plaintiff appointment requests where the plaintiff seeking appointment received access to insider information. *In re Indep. Energy Holdings PLC Sec. Litig*., 210 F.R.D. at 482 ("[A]typicality has been found where there is evidence that the named plaintiff received information, either directly or indirectly, from an officer or director"); *Beck v. Status Game Corp.,* 1995 WL 422067, at *3 (S.D.N.Y. July 14, 1995) (plaintiff who had direct access to an officer and director could not be class representative

because of atypicality); *Landry v. Price Waterhouse Chartered Accountants*, 123 F.R.D. 474, 476 (S.D.N.Y. 1989) (plaintiff who had access to information from corporate director deemed atypical); *Markewich v. Ersek*, 98 F.R.D. 9, 10-11 (S.D.N.Y. 1982) (plaintiff whose decision to purchase stock was based upon a recommendation from a broker privy to inside information held to be an inadequate representative of the class); *Grace III v. Perception Tech. Corp.*, 128 F.R.D. 165, 169 (D. Mass. 1989) ("Personal contact with corporate officers and special meetings at the company will render a plaintiff atypical to represent the class."). Quantum's status as the ultimate insider renders it a wholly inappropriate candidate for lead plaintiff. This alone warrants a denial of Quantum's request to be appointed lead plaintiff.

Quantum lacks typicality for the additional reason that it engaged in materially different transactions from the rest of the putative class. Typicality is defeated when the movant executed transactions that differed from those executed by other putative class members. *See, e.g.*, *Lang v. Tower Grp. Int'l, Ltd.*, 2014 WL 12779212, at *3 (S.D.N.Y. June 17, 2014) (recognizing that "[t]he manner in which a potential lead plaintiff acquired shares may affect that plaintiff's ability to represent the class"); *IBEW Loc. 90 Pension Fund v. Deutsche Bank AG*, 2013 WL 5815472, at *19 (S.D.N.Y. Oct. 29, 2013) (plaintiff's operation as in-and-out traders "alone defeats certification"); *Andrada v. Atherogenics, Inc.*, 2005 WL 912359, at *5 (S.D.N.Y. Apr. 19, 2005) (denying lead plaintiff motion because investor purchased call options instead of common stock like most putative class members).

Unlike other putative class members, Quantum executed numerous transactions, as the issuer, at contractually set prices rather than the market price. These issuances—which Quantum claims as losses in this case (*see, e.g.*, Compl. ¶ 141)—are categorically different from public

market sales and purchases by other putative class members, and further underscore why Quantum's request to represent a putative class of its own stockholders should be rejected.

*First*, Quantum diluted its own share price by selling or issuing approximately 90 million shares of its own stock. *See*, *e.g.*, Am. Compl. ¶ 208 ("Based on records maintained by Quantum, approximately 90 million shares were sold or issued for value by Quantum" during the Relevant Period); *see* Mot. at 5 ("Quantum . . . sold more than 16 million shares during the Class Period"). Quantum did this despite recognizing in its SEC filings that shareholders—*i.e.*, the other members of the putative class—would "suffer dilution" as a result of Quantum's "additional sale[s] or issuance[s]" of its own stock. Ex. 5 at S-34 (Quantum, Prospectus Supplement (Feb. 11, 2021)). Because no other putative class members' stock sales had the same dilutive effect, Quantum's issuances are fundamentally different from other investors' stock sales. *See*, *e.g.*, *Lang*, 2014 WL 12779212, at *3 ("[A]typicality of [movant's] acquisition" of shares precluded lead plaintiff appointment).

*Second*, Quantum issued warrants during the Class Period that holders could exercise at fixed prices in exchange for newly issued shares. *See*, *e.g.*, *EMA Fin. LLC v. NFusz, Inc*., 444 F. Supp. 3d 530, 544 n.19 (S.D.N.Y. 2020) (warrants represent "the option to purchase shares of common stock at a fixed price in the future"); *see*, *e.g.*, Ex. 21, F-25. These shares were not issued in reliance on the market price for Quantum common stock, which again underscores the distinction between Quantum's stock issuances and other putative class members' stock sales.

*Finally,* Quantum established a share option plan for directors, officers, employees and consultants of the Company atypical of putative class members' stock sales. *See* Ex. 21 at F-30. In the case of employee stock options, "the affirmative investment decision is made when the employees decide whether to exercise their options." *Lampkin v. UBS Fin. Servs*., 925 F.3d 727,

736 (5th Cir. 2019), *accord May v. Barclays PLC,* 2025 WL 887300, at *11 (S.D.N.Y. Mar. 21, 2025), *reconsideration denied,* 2025 WL 1569633 (S.D.N.Y. June 3, 2025) ("[A]n investor who exercises an option, exchanging the right to obtain a share of stock in exchange for the actual share, does not purchase or sell the share of stock"). Quantum made no "investment decision" with respect to these options. *See Isquith by Isquith v. Caremark Int'l, Inc.*, 136 F.3d 531, 536 (7th Cir. 1998) ("[T]here can be no suit under the securities laws by someone who has not made an investment decision, that is, who has not made a choice . . . to buy or sell securities"). These stock issuances to employee option holders who exercised options at a fixed price are fundamentally different from the market-based sales at issue for the remaining putative class.

## **CONCLUSION**

For the foregoing reasons, this Court should deny Quantum's Motion in its entirety, or alternatively hold the Motion in abeyance or stay the Class Action pending a decision on the MTD in the Original Action.

Dated:  March 9, 2026                         Respectfully submitted,
        New York, New York


/s/ Kevin P. Broughel                         /s/ Alexander J. Willscher
Kevin P. Broughel                             Alexander J. Willscher
Brian L. Muldrew                              Matthew J. Porpora
Zoe Lo                                        Jonathan S. Carter
KATTEN MUCHIN ROSENMAN LLP                    SULLIVAN & CROMWELL LLP
50 Rockefeller Plaza                          125 Broad Street
New York, New York 10020                      New York, New York 10004
Telephone: (212) 940-8800                     Telephone: (212) 558-4000
Facsimile: (212) 940-8776                     Facsimile: (212) 558-3588
kevin.broughel@katten.com                     willschera@sullcrom.com
brian.muldrew@katten.com                      porporam@sullcrom.com
zoe.lo@katten.com                             carterjo@sullcrom.com


Charles A. DeVore (*pro hac vice* pending)    David N. Whalen (admitted *pro hac vice*)
Benjamin Levine (admitted *pro hac vice*)     SULLIVAN & CROMWELL LLP
KATTEN MUCHIN ROSENMAN LLP                    1700 New York Avenue, N.W., Suite 700
525 W. Monroe Street                          Washington, D.C. 20006
Chicago, Illinois 60661                       Telephone: (202) 956-7500
Telephone: (312) 902-5200                     Facsimile: (202) 293-6330
Facsimile: (312) 902-1061                     whalend@sullcrom.com
charles.devore@katten.com
benjamin.levine@katten.com                    *Counsel for RBC Dominion Securities Inc.,*
                                              *RBC Capital Markets, LLC, and Royal*
*Counsel for CIBC World Markets Inc., CIBC*   *Bank of Canada*
*World Markets Corp., and the Canadian*
*Imperial Bank of Commerce*

**CERTIFICATE OF COMPLIANCE WITH LOCAL CIVIL RULE 7.1(C)**

Pursuant to Local Civil Rule 7.1(c), I hereby certify that this Memorandum contains 5,087 words, which complies with the word-count limitation set forth in that Rule.

*/s/ Kevin P. Broughel*