**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PAUL J. DURKACZ, individually and on behalf of all others similarly situated,<br><br>           Plaintiff,<br><br>v.<br><br>CIBC WORLD MARKETS, INC., CIBC WORLD MARKETS CORP., THE CANADIAN IMPERIAL BANK OF COMMERCE, RBC DOMINION SECURITIES, INC., RBC CAPITAL MARKETS, LLC, and ROYAL BANK OF CANADA,<br><br>           Defendants. | Case No. 1:25-cv-10565<br><br>The Honorable Edgardo Ramos<br><br>CLASS ACTION |
| QUANTUM BIOPHARMA LTD.,<br><br>           Plaintiff,<br><br>v.<br><br>CIBC WORLD MARKETS, INC., RBC DOMINION SECURITIES INC., and JOHN DOES 1 THROUGH 10,<br><br>           Defendants. | Case No. 1:24-cv-07972<br><br>The Honorable Edgardo Ramos |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT**
**OF QUANTUM BIOPHARMA LIMITED'S MOTION FOR CONSOLIDATION OF**
**RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL**
**OF SELECTION OF LEAD COUNSEL**

**TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ........................................................................ 1

II.     ARGUMENT................................................................................................... 1

        A.      Defendants' Objections are Procedurally Improper ................................ 1

        B.      Defendants' Adequacy Objections are Factually and Legally Flawed.... 3

                1.      Quantum Does Not Face Unique Mismanagement or Misconduct
                        Defenses.................................................................................. 3

                2.      Quantum Does Not Face a Unique Statute-of-Limitations
                        Defense .................................................................................. 4

                3.      Quantum Does Not Face Unique Forum Non Conveniens or
                        Jurisdictional Defenses ........................................................... 6

                4.      Quantum Does Not Face a Unique Reliance Defense .................... 7

        C.      Quantum Is Typical................................................................................. 7

        D.      Consolidation is Appropriate .................................................................. 9

III.    CONCLUSION............................................................................................... 11

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re VEON Ltd. Sec. Litig.*,
2022 WL 1284547 (S.D.N.Y. Apr. 29, 2022)..............................................................................5

*Alki Partners, L.P. v. Vatas Holding GmbH*,
769 F. Supp. 2d 478 (S.D.N.Y. 2011).......................................................................................7

*Andrada v. Atherogenics, Inc.*,
2005 WL 912359 (S.D.N.Y. Apr. 19, 2005)..............................................................................9

*Bosch v. Credit Suisse Grp. AG*,
2022 WL 4285377 (E.D.N.Y. Sept. 12, 2022) ..........................................................................2

*Brownbridge v. TFI Int'l Inc.*,
2025 WL 2476314 (S.D.N.Y. Aug. 28, 2025).............................................................................2

*Christiansen v. Spectrum Pharms., Inc.*,
2025 WL 2234041 (S.D.N.Y. Aug. 4, 2025).............................................................................4

*City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.*,
637 F.3d 169 (2d Cir. 2011) ......................................................................................................5

*Di Scala v. ProShares Ultra Bloomberg Crude Oil*,
2020 WL 7698321 (S.D.N.Y. Dec. 28, 2020) ..........................................................................4

*Diesenhouse v. Soc. Learning & Payments, Inc.*,
2022 WL 3100562 (S.D.N.Y. Aug. 3, 2022)..............................................................................5

*Dietrich v. Bauer*,
192 F.R.D. 119 (S.D.N.Y. 2000) ...............................................................................................3

*Faris v. Longtop Fin. Techs. Ltd.*,
2011 WL 4597553 (S.D.N.Y. Oct. 4, 2011) ..............................................................................3

*Finocchiaro v. NQ Mobile, Inc.*,
2016 WL 7031613 (S.D.N.Y. Dec. 1, 2016) ..............................................................................2

*Foley v. Transocean Ltd.*,
272 F.R.D. 126 (S.D.N.Y. 2011) ...............................................................................................6

*Fort Worth Emps' Ret. Fund v. J.P. Morgan Chase & Co.*,
862 F. Supp. 2d 322 (S.D.N.Y. 2012) .......................................................................................2

*Glick v. Arqit Quantum Inc.*,
   666 F. Supp. 3d 222 (E.D.N.Y. 2023) .................................................................................. 10

*Gurary v. Winehouse*,
   190 F.3d 37 (2d Cir. 1999) ................................................................................................ 7

*HSBC Bank USA, N.A. v. Francis*,
   214 A.D.3d 58 (N.Y. App. Div. 2023)................................................................................ 10

*IBEW Loc. 90 Pension Fund v. Deutsche Bank AG*,
   2013 WL 5815472 (S.D.N.Y. Oct. 29, 2013)...................................................................... 9

*In re Bank of Am. Corp. Sec. Derivative and Emp. Ret. Income Sec. Act (ERISA) Litig.*,
   2010 WL 1438980 (S.D.N.Y. Apr. 9, 2010)...................................................................... 10

*In re Barrick Gold Sec. Litig.*,
   314 F.R.D. 91 (S.D.N.Y. 2016) ..................................................................................... 4, 8

*In re Hebron Tech. Co., Ltd. Sec. Litig.*,
   2020 WL 5548856 (S.D.N.Y. Sept. 16, 2020) ................................................................... 7

*In re Indep. Energy Holdings PLC Sec. Litig.*,
   210 F.R.D. 476 (S.D.N.Y. 2002) ....................................................................................... 7

*In re Initial Pub. Offering Sec. Litig.*,
   224 F.R.D. 550 (S.D.N.Y. 2004)........................................................................................ 5

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
   2008 WL 2941215 (S.D.N.Y. July 30, 2008)..................................................................... 3

*In re Network Assocs., Inc. Sec. Litig.*,
   76 F. Supp. 2d 1017 (N.D. Cal. 1999) ........................................................................... 4, 6

*In re New Oriental Educ. & Tech. Grp. Sec. Litig.*,
   293 F.R.D. 483 (S.D.N.Y. 2013)...................................................................................... 10

*In re Tronox, Inc. Sec. Litig.*,
   262 F.R.D. 338 (S.D.N.Y. 2009)...................................................................................... 10

*Kamdem-Ouaffo v. Pepsico, Inc.*,
   314 F.R.D. 130 (S.D.N.Y. 2016)...................................................................................... 10

*Katz v. Marex Grp. PLC*,
   2026 WL 265496 (S.D.N.Y. Feb. 2, 2026) ...................................................................... 10

*Labul v. XPO Logistics, Inc.*,
   2019 WL 1450271 (D. Conn. Apr. 2, 2019)....................................................................... 3

*Lang v. Tower Grp. Int'l,*
  2014 WL 12779212 (S.D.N.Y. June 17, 2014) ................................................................. 9

*Leone v. ASP Isotopes Inc.,*
  2025 WL 3484821 (S.D.N.Y. Dec. 4, 2025) ..................................................................... 9

*Merck & Co. v. Reynolds,*
  559 U.S. 633 (2010) .......................................................................................................... 5

*Morrison v. Nat'l Australian Bank Ltd.,*
  561 U.S. 247 (2010) .......................................................................................................... 6

*Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Ind. Ltd.,*
  432 F. Supp. 3d 131 (D. Conn. 2019) ............................................................................... 5

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co., Inc.,*
  229 F.R.D. 395 (S.D.N.Y. 2004) ............................................................................... 2, 3, 8

*Rice v. Genworth Fin. Inc.,*
  2017 WL 3699859 (E.D. Va. Aug. 25, 2017) ................................................................... 4

*Sgalambo v. McKenzie,*
  268 F.R.D. 170 (S.D.N.Y. 2010) ...................................................................................... 6

*Stanich v. Travelers Indem. Co.,*
  259 F.R.D. 294 (N.D. Ohio 2009) ..................................................................................... 3

*Steginsky v. Xcelera, Inc.,*
  2015 WL 1036985 (D. Conn. Mar. 10, 2015) ................................................................... 7

*Strougo v. Mallinckrodt Pub. Ltd. Co.,*
  2020 WL 3469056 (S.D.N.Y. June 25, 2020) ................................................................... 6

*Superintendent of Ins. of State of N.Y. v. Bankers Life & Cas. Co.,*
  404 U.S. 6 (1971) .............................................................................................................. 8

*Tri-Star Farms Ltd. v. Marconi, PLC,*
  225 F. Supp. 2d 567 (W.D. Pa. 2002) ............................................................................... 6

*Waggoner v. Barclays PLC,*
  875 F.3d 79 (2d Cir. 2017) ................................................................................................ 7

*Weinberg v. Atlas Air Worldwide Holdings, Inc.,*
  216 F.R.D. 248 (S.D.N.Y. 2003) ...................................................................................... 7

*Yang v. Tr. for Advised Portfolios,*
  2022 WL 970772 n.3 (E.D.N.Y. Mar. 31, 2022) .............................................................. 2

*Yates v. Open Joint Stock Co. "Vimpel-Commu*nications",
  2005 WL 1018428 (S.D.N.Y. Apr. 29, 2005)............................................................................ 2


**Statutes**

15 U.S.C. § 78u-4(a)(3) ..................................................................................................... 1, 2, 8

Quantum submits this reply in support of its Motion for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Selection of Lead Counsel (ECF No. 32, "Motion"), and in response to Defendants' Opposition (ECF No. 37, "Opposition" or "Opp.").[1]

## I.   PRELIMINARY STATEMENT

Defendants' Opposition is a transparent attempt to derail this litigation as it begins. For years, they manipulated Quantum's stock price through illegal "spoofing" trades, profiting at the expense of investors who transacted in Quantum securities at artificially depressed prices. Now, faced with the prospect of a consolidated class action led by the movant with the largest financial stake in the litigation, Defendants ask this Court to allow them to choose their adversary. The PSLRA does not permit such gamesmanship, and the Court should reject Defendants' invitation.

The PSLRA directs that the Court "shall" appoint the movant with the "largest financial interest in the relief sought" who makes a *prima facie* showing of typicality and adequacy. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Quantum satisfies each requirement. It has the largest financial interest, having sold more than 16 million shares during the Class Period for proceeds exceeding $47 million; its claims are typical of the Class; and it will fairly and adequately protect the Class's interests. Defendants' contrary arguments rest on speculation, mischaracterize the record, and reflect a fundamental misunderstanding of the governing standard. The PSLRA gives Defendants no role in selecting the lead plaintiff, and their merits-based objections are premature. For these reasons, and those set forth in Quantum's Motion, the Court should grant the Motion in its entirety.

## II.   ARGUMENT

### A.   Defendants' Objections are Procedurally Improper

Defendants' merits-based objections are procedurally improper. Under the PSLRA, the

---

[1] Unless noted, all emphases added, internal citations and quotations omitted, capitalized terms are defined in the Motion, and citations to "¶" or "¶¶" refer to the Complaint.

presumption that Quantum is the most adequate plaintiff "may be rebutted only upon proof by a member of the purported plaintiff class..." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). This language "does not provide for any involvement by a defendant in the initial selection of lead plaintiff." *Fort Worth Emps' Ret. Fund v. J.P. Morgan Chase & Co.*, 862 F. Supp. 2d 322, 325 (S.D.N.Y. 2012); *see also Yang v. Tr. for Advised Portfolios*, 2022 WL 970772, at \*4 n.3 (E.D.N.Y. Mar. 31, 2022) (The "presumption may be rebutted only upon proof by a member of the purported plaintiff class…which Defendants are not.").

Even in the uncommon instance when courts "permit[] defendants to make a limited facial challenge" to a movant, courts consistently reject fact-intensive merits objections as premature. *See Brownbridge v. TFI Int'l Inc.*, 2025 WL 2476314, at \*4 (S.D.N.Y. Aug. 28, 2025) (rejecting adequacy objection based on loss size); *Yates v. Open Joint Stock Co. "Vimpel-Communications"*, 2005 WL 1018428, at \*2–3 (S.D.N.Y. Apr. 29, 2005) (rejecting "unique" loss-causation defense). At this stage, courts limit defense-side objections to narrow procedural defects and facial deficiencies, such as inadequate notice or untimeliness. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 406 n.16, 408 (S.D.N.Y. 2004).[2]

Here, no "member of the purported plaintiff class" has objected to Quantum's appointment or questioned its ability to protect the Class. Only the Defendants accused of fraud object. And far from raising narrow procedural objections, they make merits arguments that courts have repeatedly found premature. If accepted, their argument would impermissibly expand the role of defendants

---

[2] Defendants' own cases underscore the narrow scope of defense-side challenges (infrequently) permitted. *See Finocchiaro v. NQ Mobile, Inc.*, 2016 WL 7031613, at \*2–\*3 (S.D.N.Y. Dec. 1, 2016) (entertaining procedural objections based on defective notice, untimely motions, and gross misconduct in case prosecution); *Bosch v. Credit Suisse Grp. AG*, 2022 WL 4285377, at \*5–6 (E.D.N.Y. Sept. 12, 2022) (permitting defense objection where movant claimed only $621 loss, undermining incentive to supervise counsel—a facial deficiency apparent from movant's motion).

in the lead plaintiff selection process and transform the PSLRA's threshold inquiry into a pre-discovery adjudication of their defenses. This Court should reject Defendants' attempt to hijack the appointment process.

### B.    Defendants' Adequacy Objections are Factually and Legally Flawed

Defendants fail to rebut Quantum's prima facie showing of adequacy. Opp. at 16-17. They must offer specific, non-speculative evidence of a unique defense that would prevent it from fairly representing the Class. *See Labul v. XPO Logistics, Inc.*, 2019 WL 1450271, at *9 (D. Conn. Apr. 2, 2019). Even at class certification, a conflict defeats adequacy only where it "is so palpable as to outweigh the substantial interest of every class member in proceeding with the litigation." *Dietrich v. Bauer*, 192 F.R.D. 119, 127 (S.D.N.Y. 2000). Defendants fall far short of this standard.

### 1.    Quantum Does Not Face Unique Mismanagement or Misconduct Defenses

Defendants contend, based on Quantum's public filings, that its own supposed "mismanagement" or "misconduct" caused its stock price decline, rendering it subject to unique defenses. Opp. at 15-16. This argument fails at the outset. Defendants offer no evidence of wrongdoing and their attempt to label ordinary business challenges as "mismanagement" is unsupported by the record. *See Pirelli*, 229 F.R.D. at 416–17 (unproven allegations of prior misconduct do not rebut adequacy absent "specific connection" between them and the alleged actions at issue); *Stanich v. Travelers Indem. Co.*, 259 F.R.D. 294, 315 (N.D. Ohio 2009) ("[U]nrelated unethical or even criminal conduct is not sufficient to support a finding of inadequacy.").[3] Defendants identify no criminal or civil actions against, or even investigations of,

---

[3] Defendants mischaracterize the authority they cite for the proposition that unproven prior accusations establish inadequacy. *See In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2008 WL 2941215, at *6 (S.D.N.Y. July 30, 2008) (evidence of prior wrongdoing, including convictions, is "not persuasive (in that it fails to rebut the presumption of adequacy afforded to a lead plaintiff)"); *Faris v. Longtop Fin. Techs. Ltd.*, 2011 WL 4597553, at *8 (S.D.N.Y. Oct. 4, 2011) (disqualifying

Quantum bearing on its ability to serve as lead plaintiff. They only raise operational challenges, litigation, and market volatility—issues many public companies face and which provide no basis for disqualification.

In any event, Defendants' argument is procedurally improper because it depends on disputed, fact-intensive assertions that cannot be resolved at the lead plaintiff stage before discovery. Whether any business challenges impacted Quantum's stock price, and to what extent, is a class-wide merits issue that must be addressed no matter who is appointed Lead Plaintiff. Quantum is therefore no differently situated than any other Class member with respect to this defense, unlike the plaintiffs in Defendants' cases.[4] Courts routinely reject similar efforts to transform lead plaintiff proceedings into pre-discovery merits adjudications. *See In re Barrick Gold Sec. Litig.*, 314 F.R.D. 91, 105 (S.D.N.Y. 2016) (loss causation need not be shown even at class certification).

**2.    Quantum Does Not Face a Unique Statute-of-Limitations Defense**

Defendants argue that Quantum allegedly was "on inquiry notice of its claims in 2021" and "had access to the same publicly available market data that underpins" this Action. Opp. at 16-17. This argument is both procedurally improper and factually wrong. Courts have repeatedly held

---

movant where a Chapter 11 trustee alleged movant knowingly profited from a Ponzi scheme); *In re Network Assocs., Inc. Sec. Litig.*, 76 F. Supp. 2d 1017, 1029 (N.D. Cal. 1999) (disqualifying institution whose sister banks were under criminal fraud investigations, had been raided, and CEO had been arrested for tax evasion and fraud).

[4] *See Rice v. Genworth Fin. Inc.,* 2017 WL 3699859, *12 (E.D. Va. Aug. 25, 2017) (rejecting plaintiff who simultaneously pursued derivative claims on behalf of a company and securities fraud claims against it); *Di Scala v. ProShares Ultra Bloomberg Crude Oil*, 2020 WL 7698321, at *4 (S.D.N.Y. Dec. 28, 2020) (rejecting plaintiff "whose losses overwhelmingly reflect his sale of put options" because he may not have been "motivated by the same market incentives as class members who traded shares on the open market"); *Christiansen v. Spectrum Pharms., Inc.*, 2025 WL 2234041, at *3 (S.D.N.Y. Aug. 4, 2025) (disqualifying plaintiff whose "interest in this case is driven, at least in part, by a desire to further his personal convictions" which are "entirely irrelevant to any of the claims" and thus "suggests a conflict of interest [with] the putative class.")

that potential statute-of-limitations defenses do not defeat adequacy at the lead plaintiff stage. *See, e.g., In re Initial Pub. Offering Sec. Litig.*, 224 F.R.D. 550, 554–55 (S.D.N.Y. 2004).

Moreover, the limitations period begins when a diligent investor would have discovered sufficient facts to plead its claims with the particularity required to survive a Rule 12(b)(6) motion —"not when a reasonable investor would have begun investigating." *City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 174 (2d Cir. 2011); *see also Merck & Co. v. Reynolds*, 559 U.S. 633, 653 (2010) (limitations period runs upon discovery of "facts constituting the violation" —not when "storm warnings" prompt investor to "begin investigating"). Defendants must identify specific facts "showing [] plaintiffs could have pled their claims earlier." *Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Ind. Ltd.*, 432 F. Supp. 3d 131, 178–79 (D. Conn. 2019).

Defendants identify no such facts regarding what Quantum's pre-suit investigation showed and when. They only point to Quantum's general statements about its pre-investigation efforts. Nothing indicates that Quantum knew, and could have pleaded with the requisite particularity over two years earlier than it did: the scope of the alleged manipulation; that Defendants were the perpetrators; that they acted with scienter; and how their conduct caused losses. *See Diesenhouse v. Soc. Learning & Payments, Inc.*, 2022 WL 3100562, at *6 (S.D.N.Y. Aug. 3, 2022) (rejecting statute-of-limitations argument absent discovery of facts "with sufficient detail and particularity to demonstrate each element" of claim). This case is therefore nothing like *In re VEON Ltd. Sec. Litig.*, upon which Defendants rely. *See* 2022 WL 1284547, at *5 (S.D.N.Y. Apr. 29, 2022) (rejecting plaintiff who "attempted to join an existing class action via amendment following the expiration of the statute of limitations" because his claim had not been tolled). Quantum's diligent pre-suit investigation—conduct that courts cite as a hallmark of adequacy—cannot be transformed into a disqualifying factor.

Lastly, and critically, Defendants' statute-of-limitations argument is not unique to Quantum. The market data and public information upon which its investigation was based were available to all Class members. It is thus situated no differently with respect to this defense.

### 3.    Quantum Does Not Face Unique Forum Non Conveniens or Jurisdictional Defenses

Defendants argue that as a Canadian plaintiff, Quantum faces unique personal jurisdiction, extraterritoriality under *Morrison v. Nat'l Australian Bank Ltd.*, 561 U.S. 247 (2010), and forum non conveniens defenses. Opp. at 18. Not so. The Class alleges violations of U.S. securities laws based on trading on U.S. exchanges. ¶¶129-51. Quantum sold over 16 million shares through at-the-market offerings on U.S. exchanges. *See* Freeman Decl., Ex. B. These transactions fall squarely within the scope of U.S. securities laws, presenting no *Morrison* extraterritoriality issues.

Any Canadian Class member would face these same issues. But being a Canadian investor, without more, is not grounds for rejection as a lead plaintiff.[5] Courts regularly appoint foreign investors, including Canadian ones, as lead plaintiffs. *See, e.g., Strougo v. Mallinckrodt Pub. Ltd. Co.*, 2020 WL 3469056, at *4 (S.D.N.Y. June 25, 2020) (appointing Canadian Elevator Industry Pension Trust Fund); *Sgalambo v. McKenzie*, 268 F.R.D. 170, 176 (S.D.N.Y. 2010) (collecting cases appointing foreign plaintiffs); *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 133–34 (S.D.N.Y. 2011) ("[N]othing in the Court's  decision [in *Morrison*] provides any support for the notion that foreign investors are not adequate plaintiffs in [U.S.] courts when the securities at issue were purchased on a [U.S.] exchange.").

---

[5] Defendants' cases are inapplicable. *See In re Network Assocs.,* 76 F. Supp. 2d at 1030. ("The distances involved and some differences in business culture would impede their ability to manage and to control American lawyers conducting litigation in California[, but t]he Court certainly does not say that a foreign investor could never qualify."); *Tri-Star Farms Ltd. v. Marconi, PLC*, 225 F. Supp. 2d 567, 572 (W.D. Pa. 2002) (analyzing whether the subject-matter jurisdiction existed "under the Exchange Act over the claims of foreign purchasers … on a ***foreign exchange***").

### 4. Quantum Does Not Face a Unique Reliance Defense

Defendants also argue that Quantum faces a unique reliance defense because it "traded despite believing its stock was being manipulated." Opp. at 18-19. This argument is procedurally improper, and fundamentally mischaracterizes the record and applicable law. "[D]efendants bear the burden of persuasion to rebut the *Basic* presumption of reliance ***at the class certification stage***." *Waggoner v. Barclays PLC*, 875 F.3d 79, 102 (2d Cir. 2017). Defendants here proffer no evidence that Quantum believed the suspected manipulation would continue or otherwise knew the market was manipulated at the specific time of trading. Nor do Defendants explain how an investigation into earlier suspicious trading activity could defeat reliance for later trades. Their argument wrongly assumes without evidence that any suspicion of past misconduct places investors on perpetual notice that a market remains manipulated indefinitely.[6]

### C. Quantum Is Typical

Typicality does not require "identical" claims, only that the movant's "injuries arose from the same course of conduct" that injured other class members. *See Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 253 (S.D.N.Y. 2003). Both Quantum's and the Class's claims turn on whether Defendants engaged in a scheme violating the securities laws and artificially depressed Quantum's stock, satisfying typicality. Thus, Defendants' typicality arguments have no merit.

---

[6] Defendants' cases are thus all inapposite. *See Alki Partners, L.P. v. Vatas Holding GmbH*, 769 F. Supp. 2d 478, 493 (S.D.N.Y. 2011) (dismissing case where plaintiffs, "by their own admissions, did not rely on that market"); *In re Hebron Tech. Co., Ltd. Sec. Litig.*, 2020 WL 5548856, at *8 (S.D.N.Y. Sept. 16, 2020) (movant traded after fraud fully revealed); *Gurary v. Winehouse*, 190 F.3d 37, 45 (2d Cir. 1999) (affirming summary judgment based on "plaintiff's own admission" that he "made each of these purchases in the belief that the prices he paid reflected Winehouse's allegedly manipulative activities."); *In re Indep. Energy Holdings PLC Sec. Litig.*, 210 F.R.D. 476, 482 (S.D.N.Y. 2002) (denying appointment at class certification "[g]iven the extensive relationship between Becnel and [Defendant], and the magnitude of information conveyed during that relationship"); *Steginsky v. Xcelera, Inc.*, 2015 WL 1036985, at *7 (D. Conn. Mar. 10, 2015) (denying class certification based on deposition testimony indicating that "plaintiff voluntarily transact[ed] with her deceivers after detecting the alleged fraud").

7

*First*, Defendants' suggestion that as an issuer, Quantum is atypical, is unsupported. Opp. at 8, 19-20. Nothing in the PSLRA creates a categorical bar on issuers serving as lead plaintiff. *See Superintendent of Ins. of State of N.Y. v. Bankers Life & Cas. Co.*, 404 U.S. 6, 9 (1971) (issuers are "clearly protected by [Section 10(b)] of the Securities Exchange Act"). The statute simply directs courts to appoint the movant with the "largest financial interest in the relief sought by the class" who makes a *prima facie* showing of typicality and adequacy. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

*Second*, Defendants speculate that Quantum "had unparalleled access to non-public information," but do not identify what information Quantum possessed and how that would have revealed Defendants' alleged spoofing or otherwise rendered Quantum atypical. Opp. at 19-21. Without any proof that Quantum even had such information, Defendants cannot defeat typicality at the lead plaintiff stage before any discovery. *See Pirelli*, 229 F.R.D. at 406 n.16, 408.

*Third*, Defendants argue that Quantum "engaged in materially different transactions from the rest of the putative class" where shares were purportedly issued "at contractually set prices rather than the market price." Opp. at 20-21. Defendants ignore that Quantum sold more than 16 million shares through at-the-market offerings at prevailing market prices, transactions indistinguishable from other Class members' open-market sales and equally affected by Defendants' spoofing scheme. *See* ECF No. 33 at 2, 7. As to Quantum's other transactions, Defendants offer no evidence that those shares were unaffected by the alleged manipulation, that no damages are associated with them, or that any damages would be measured differently. Instead, they ask the Court to accept disputed factual assertions about loss causation and damages at the lead plaintiff stage, which courts repeatedly decline to do. *See, e.g., In re Barrick Gold Sec. Litig.*, 314 F.R.D. 91, 105 (S.D.N.Y. 2016) (loss causation need not be shown at class certification). Their argument is also illogical: Defendants' manipulation depressed Quantum's stock price, forcing it

to issue more securities to cover fixed liabilities; both the source and magnitude of that harm are typical of all Class members.[7]

In any event, courts in this District have repeatedly held that formal differences in a movant's transactions do not render it atypical where its claims turn on the same alleged misconduct. *See, e.g., Leone v. ASP Isotopes Inc.*, 2025 WL 3484821, at *28 (S.D.N.Y. Dec. 4, 2025) (differences in manner of acquisition "do not defeat typicality so long as their injuries stem from the same" misconduct).

### D.    Consolidation is Appropriate

Defendants argue that consolidation is improper because of the pending motion to dismiss in the Related Action. Opp. at 10-12. This argument is meritless. Since no ruling has been issued in the Related Action, consolidating now is non-prejudicial. Defendants may raise pleading arguments again after consolidation. Therefore, consolidation does not enable Quantum to "evade" a motion to dismiss as they suggest (Opp. at 8).

Indeed, Defendants' position would allow any defendant to defeat consolidation—and delay class representation—simply by moving to dismiss in a related action. This is contrary to the PSLRA, which favors early consolidation to promote efficiency and avoid inconsistent rulings in actions alleging the same misconduct. Courts routinely consolidate related securities actions at the outset, even where motions to dismiss are pending, particularly where, as here, the cases involve

---

[7] Defendants' cases involve facts which do not exist here. *See Lang v. Tower Grp. Int'l*, 2014 WL 12779212, at *3–4 (S.D.N.Y. June 17, 2014) (appointing movant who acquired 35% of its shares through private placement as co-, but not sole, lead plaintiff); *IBEW Loc. 90 Pension Fund v. Deutsche Bank AG*, 2013 WL 5815472, at *19 (S.D.N.Y. Oct. 29, 2013) (declining to appoint representatives who bought and sold "into and out of the securities at issue during the class period"); *Andrada v. Atherogenics, Inc.*, 2005 WL 912359, at *5 (S.D.N.Y. Apr. 19, 2005) (declining to appoint investor who only bought call options for class of common stock).

the same securities, the same alleged scheme, and no discovery has occurred.[8] *See In re Bank of Am. Corp. Sec. Derivative and Emp. Ret. Income Sec. Act (ERISA) Litig.*, 2010 WL 1438980, at *2 (S.D.N.Y. Apr. 9, 2010) (consolidating actions without requiring movant to commit to claims on behalf of purchasers of options or debt securities because "in a securities class action, a lead plaintiff is empowered to control the management of the litigation as a whole, and it is within the lead plaintiff's authority to decide what claims to assert").

Nor does Quantum's willingness to dismiss individual common law claims create any conflict with the Class. To the contrary, it confirms Quantum's adequacy. Quantum seeks the same relief as other Class members based on the same alleged misconduct, and its decision to forego claims that predate the Class Period reduces its own potential recovery in order to advance the Class's interests. Courts find such conduct consistent with, not contrary to, adequacy. *See In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 345 (S.D.N.Y. 2009); *Glick v. Arqit Quantum Inc.*, 666 F. Supp. 3d 222, 231 (E.D.N.Y. 2023) (finding "sophisticated investor who, after sustaining significant financial losses, considered his duties as lead plaintiff and is willing to accept them" adequate where he also "has the largest financial stake").

Given the substantial overlap between the actions, consolidation will promote judicial economy, avoid inconsistent rulings, and allow this litigation to proceed in an orderly fashion under the leadership of the movant with the largest financial stake. The Court should therefore

---

[8] Defendants' citations are misplaced. *See In re New Oriental Educ. & Tech. Grp. Sec. Litig.*, 293 F.R.D. 483, 488 (S.D.N.Y. 2013) (severing options class action from American Depositary Shares class action); *Katz v. Marex Grp. PLC*, 2026 WL 265496, at *3 (S.D.N.Y. Feb. 2, 2026) (severing short sellers class action from long investors class action); *Kamdem-Ouaffo v. Pepsico, Inc.*, 314 F.R.D. 130, 137 (S.D.N.Y. 2016) (declining to consolidate actions where one was "in the midst of discovery, with dispositive motions to be soon fully submitted" and the other was in the pleading stage); *HSBC Bank USA, N.A. v. Francis*, 214 A.D.3d 58 (N.Y. App. Div. 2023) (analyzing consolidation under New York's Civil Practice Law and Rule 602 (a) where defendant had established the statute of limitations had expired in one case).

consolidate the actions and appoint Quantum as Lead Plaintiff.

### III.    CONCLUSION

In sum, Quantum respectfully requests that this Court grant its Motion in its entirety.

Dated: March 16, 2026                              Respectfully submitted,

                                                   By: */s/ Devin (Velvel) Freedman*
                                                       Devin (Velvel) Freedman
                                                       Kyle Roche
                                                       Stephen Lagos
                                                       **FREEDMAN NORMAND FRIEDLAND
                                                       LLP**
                                                       10 Grand Central
                                                       155 E. 44th Street, Suite 905
                                                       New York, New York 10017
                                                       Tel: (646) 350-0527
                                                       vel@fnf.law
                                                       kroche@fnf.law
                                                       slagos@fnf.law

                                                       Abraham Alexander
                                                       485 Lexington Avenue
                                                       **GRANT & EISENHOFER P.A.**
                                                       New York, NY 10017
                                                       Tel: (646) 722-8500
                                                       Fax: (610) 722-8501
                                                       aalexander@gelaw.com

                                                       *Counsel for Proposed Lead Plaintiff*
                                                       *Quantum BioPharma Limited and Proposed*
                                                       *Lead Counsel for the Class*

                                                       James Wes Christian
                                                       **CHRISTIAN ATTAR**
                                                       1177 West Loop South, Suite 1700
                                                       Houston, TX 77027
                                                       Tel: (713) 659-7617

                                                       *Additional Counsel for Proposed Lead*
                                                       *Plaintiff Quantum BioPharma Limited*

11

**CERTIFICATE OF WORD COUNT**

The undersigned counsel of Quantum certifies that this brief contains 3,498 words, which complies with the word limit of Local Civil rule 7.1(c).

Executed on March 16, 2026.

*/s/ Devin (Velvel) Freedman*
Devin (Velvel) Freedman

12

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 16, 2026, I caused the foregoing to be filed electronically with the Court's Case Management/Electronic Case filing System ("CM/ECF"). Notice of the filing was sent to all parties of record by operation of the Notice of Electronic Filing System, and the parties to this action may access the filings through CM/ECF.

Executed on March 16, 2026.

*/s/ Devin (Velvel) Freedman*
Devin (Velvel) Freedman

13