

123 Justison Street
7th Floor
Wilmington, DE 19801
tel: 302.622.7000
fax: 302.622.7100

30 N. LaSalle Street
Suite 2350
Chicago, IL 60602
tel: 312.610.5350
fax: 312.214.0001

2325 Third Street
Suite 329
San Francisco, CA 94107
tel: 415.229.9720
fax: 415.789.4367

3600 Clipper Mill Road
Suite 240
Baltimore, MD 21211
tel: 410.204.1045

5 Christy Drive
Brandywine Two, Suite 200
Chadds Ford, PA 19317
tel: 610.228.7700

www.gelaw.com

485 Lexington Avenue, 29th Floor, New York, NY 10017          tel: 646.722.8500  fax: 646.722.8501

Abe Alexander
Principal
+1 (917) 621-3649
aalexander@gelaw.com

June 25, 2026

**VIA ECF**

The Honorable Edgardo Ramos
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:    *Durkacz v. CIBC World Mkts., Inc. et al.*, No. 1:25-cv-10565 (ER) (HJR)

Dear Judge Ramos:

We write on behalf of Lead Plaintiff movant Quantum BioPharma Limited f/k/a FSD Pharma, Inc. ("Quantum") in response to the Notice of Supplemental Authority (ECF No. 42, the "Notice") filed by Defendants CIBC World Markets Inc., CIBC World Markets Corp., The Canadian Imperial Bank of Commerce, RBC Dominion Securities, Inc., RBC Capital Markets, LLC, and Royal Bank of Canada (collectively, the "Defendants") regarding Judge Caproni's recent decision in *Genius Group Limited v. Citadel Securities LLC*, No. 25-cv-9546 (S.D.N.Y. June 18, 2026) (ECF No. 42-1, "*Genius*"). Defendants contend that *Genius* compels denial of Quantum's motion for appointment as Lead Plaintiff (ECF No. 32). It does not.

*First*, Defendants' letter rests on an egregious misstatement of fact—one that would have been apparent to Defendants' counsel upon even cursory examination of the filings in this case. The *Genius* court was concerned that 80% of the issuer's sales were consummated, *not* through "at-the-market" transactions—which are identical to the ordinary open market sales giving rise to the harm suffered by investor Class members—but instead through share issuances and options transactions, which the *Genius* court assumed had been executed "at contractually-set prices" rather than market prices. *Genius* at 6. Defendants here claim that, as in *Genius*, Quantum is also atypical because it alleges harm as a result of share issuances, warrant exercises, option transactions, and other corporate transactions "at contractually set prices rather than market prices." *See* ECF No. 37 at 20–22; Notice at 2. **This is false**. In truth, **every transaction identified in Quantum's PSLRA certification**—and thus every transaction on which Quantum relies for purposes of Lead Plaintiff appointment—**was an at-the-market sale executed into the public market**, as the certification itself plainly states. *See* ECF No. 33-2 (attached for

Page  2

convenience as Exhibit A).   Even the *Genius* court conceded that such at-the-market sales are "***indistinguishable from other Class members' sales***."   *Genius* at 6.   Thus, unlike the movant in *Genius*, Quantum seeks appointment based exclusively on the very type of market transactions that *Genius* itself recognized as typical of the investor Class.   Accordingly, far from requiring denial of Quantum's motion, *Genius* further ***supports*** Quantum's typicality here.[1]

Quantum, like every other Class member, alleges that Defendants' spoofing scheme artificially depressed the market price of Quantum stock and caused injury when shares were sold at those depressed prices.   Indeed, this Court has already held that Quantum plausibly alleged loss causation by identifying sales made at prices allegedly affected by Defendants' spoofing activity.   *See Quantum BioPharma Ltd. v. CIBC World Mkts., Inc. et al.*, No. 1:24-cv-7972-ER (S.D.N.Y. Mar. 30, 2026) (ECF No. 46) (Opinion & Order at 37–38) (the "MTD Order").   Thus, Quantum's claims, like those of absent Class members, rise or fall on proof that Defendants engaged in spoofing, that the spoofing artificially depressed the market price of Quantum stock, and that shares were sold at prices affected by that manipulation.

***Second***, Defendants' argument that Quantum is subject to unique statute of limitations or reliance defenses seeks to relitigate issues already decided by this Court, ignores the facts of this case, and misstates *Genius*' holding.   This Court has ***already considered and rejected*** Defendants' motion to dismiss argument that Quantum's claims are time-barred as a result of its investigative efforts.   *See id*. at 38–40.   As this Court explained, "courts in this jurisdiction have allowed spoofing cases to advance past the pleading stage when the complaint details that plaintiff pursued lengthy investigations prior to filing the complaint, even if they were concerned about manipulation years prior."   *Id*. at 39–40.   The *Genius* court ***specifically distinguished*** this Court's holding, reasoning that, unlike Quantum, the issuer in *Genius* announced that it had "'proof' of misconduct," which the *Genius* court felt expressed a degree of certainty qualitatively different from Quantum's statements reflecting mere ongoing investigation.   *Genius* at 7–8; *see also In re Tronox, Inc. Sec. Litig*., 262 F.R.D. 338, 345–46 (S.D.N.Y. 2009) (holding that partial corrective disclosures that neither mentioned fraud nor sufficiently corrected prior misstatements did not subject lead plaintiff to unique defenses rendering it atypical).   Defendants' reliance argument fails for the same reason: it ignores this Court's holding that Quantum's investigation and generalized concerns about potential past acts manipulation are not coextensive with the knowledge required to negate reliance with regard to all future transactions.

***Third***, Defendants' suggestion that this litigation is "lawyer driven" is unsupported by the record and contrary to common sense.   *See* Notice at 2.   Quantum did not passively lend its name

---

[1] Moreover, and contrary to Defendants' assertions, *Genius* did not hold that an issuer is categorically atypical if it engaged in ***any*** sales that were not plain-vanilla at-the-market transactions.   It held that the issuer in *that* case was atypical because its non-at-the-market transactions (stock issuances, options transactions, etc.) "***significantly outnumbered***" its market sales.   *Genius* at 6.   Defendants here make no showing that Quantum's non-at-the-market transactions "significantly outnumbered" its market sales.   Nor, as discussed above, can they.

Page  3

to a lawsuit conceived and directed by counsel.  Long before appointment of a lead plaintiff became an issue, Quantum undertook its own investigation into the alleged spoofing scheme, retained experts, analyzed trading data, publicly discussed its findings, issued press releases concerning the suspected misconduct, and commenced litigation.  An issuer that independently investigates wrongdoing affecting its shareholders cannot reasonably be characterized as a passive vehicle for attorney-driven litigation

*Fourth*, and critically, this case's procedural posture further distinguishes it from *Genius*. This Court **has already** held that Quantum plausibly alleged a widespread spoofing scheme involving hundreds of spoofing cycles, repeated placement and cancellation of baiting orders, and trading activity that artificially depressed the price of Quantum stock.  *See* MTD Order at 27–36 (holding that Quantum adequately alleged manipulative conduct and scienter).  The Court has also **already held** that Quantum plausibly alleged that Defendants' conduct caused injury by driving down the market price of Quantum shares and enabling purchases at artificially depressed prices.  *See id.* at 37–38 (finding loss causation adequately pleaded).  Those are the same alleged injuries underlying the claims asserted on behalf of the proposed Class.  Unlike in *Genius*, where the allegations and defenses were entirely untested, Quantum simply seeks to litigate its *sustained* claims as part of a class alleging identical misconduct, against identical parties, arising from the same facts, and causing the same harm.

*Finally*, Defendants' newly-made request that the Court refrain from reopening the PSLRA lead plaintiff process in the event it denies Quantum's motion for appointment (relief they never sought in their opposition) also misconstrues *Genius*. *See* Notice at 2–3. The *Genius* court declined to reopen the lead plaintiff process because the issuer was the only lead plaintiff candidate before it and, so, the court had no assurances that a new lead plaintiff candidate would emerge if new notice were published. Indeed, the *Genius* court distinguished authority submitted by the issuer specifically on that basis. *Genius* at 13–14. Here, by contrast, another investor—Plaintiff Paul J. Durkacz—filed the initial complaint; he has been a named party to this litigation from the outset and submitted a PSLRA certification along with his class action complaint. Thus, if the Court were to conclude that Quantum cannot serve as Lead Plaintiff, there already exists another investor who may represent the Class upon appropriate motion. Unlike in *Genius*, the Court would not need to reopen the PSLRA process or solicit new lead plaintiff candidates. The concerns that drove the court's decision in *Genius* are absent here.

For these reasons, Defendants' reliance on *Genius* is misplaced, and their Notice provides no basis to disturb Quantum's presumptive entitlement to appointment as Lead Plaintiff under the PSLRA.

Very truly yours,

*/s/ Abe Alexander*
Abe Alexander

cc:      All Counsel of Record via ECF